31 A.3d 137

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

**v.**

**Joel David JOSEPH.**

**Misc. Docket AG No. 11, Sept. Term, 2010.**

Court of Appeals of Maryland.

Oct. 27, 2011.

Reconsideration Denied Nov. 18, 2011.

**672**

Dolores O. Ridgell, Assistant Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for Petitioner.

Joel David Joseph, Beverly Hills, CA, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, *MURPHY, ADKINS, and BARBERA, JJ.

---

* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

GREENE, J.

Pursuant to Maryland Rule 16–751,[1] the Attorney Grievance Commission of Maryland ("Petitioner"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action against Joel David Joseph ("Respondent"), charging him with professional misconduct arising out of representations made to the California Bar and third persons, regarding his residency in connection with applications for appearance *pro hac vice* in California's state and federal courts. Petitioner charged Respondent with violating Rules 3.3(a)(1),[2] 8.1(b),[3] and 8.4(c) and (d)[4] of the Maryland Lawyers' Rules of Professional Conduct ("MRPC"). In accordance with Maryland Rule 16–752(a),[5] we

---

1. Maryland Rule 16–751 provides in relevant part:

 (a) **Commencement of disciplinary or remedial action.**
 (1) Upon approval or direction of Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

2. MRPC 3.3 provides:

 (a) A lawyer shall not knowingly:
 (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]

3. This charge was withdrawn by Petitioner at the conclusion of the disciplinary hearing, and the hearing court did not make findings as to MRPC 8.1(b).

 MRPC 8.1 provides:
 An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
 (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

4. MRPC 8.4 provides:

 It is professional misconduct for a lawyer to:
 (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
 (d) engage in conduct that is prejudicial to the administration of justice[.]

5. Maryland Rule 16–752(a) provides:

referred the matter to the Honorable Joseph A. Dugan, Jr. of the Circuit Court for Montgomery County, to conduct an evidentiary hearing and to render findings of fact and recommend conclusions of law. Judge Dugan held an evidentiary hearing on September 23, 2010, and in accordance with Maryland Rule 16–757(c)[6] rendered the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Respondent, Joel David Joseph, was admitted to the Maryland Bar on April 1, 1981. He is self-employed as an attorney and also works for the Made in U.S.A. Foundation, which he founded. He has a part-time "national practice" and has been admitted *pro hac vice* in 25 different jurisdictions, mostly federal courts, across the United States. In March 2007, Respondent contacted the Law Offices of Robert M. Moss, the law firm of a solo practitioner, located in Santa Monica, California. He spoke with Moss's office administrator and paralegal assistant, Suzanne Brewer. As the hearing judge recounted, "Respondent told Brewer that he was a Maryland attorney looking for local counsel to sponsor his admission *pro hac vice* and act as co-counsel in cases to be filed in California courts. Respondent told Brewer that he lived in Maryland,

(a) **Order.** Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing.

6. Maryland Rule 16–757(c) provides:

(c) **Findings and conclusions.** The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party.

had an office in Maryland and had been practicing for years." On March 23, 2007, Respondent and Moss entered into an Agreement to work together on two cases: *Wartell v. United States* and *Pribyl v. K–2.* Respondent already had retainer agreements with the plaintiffs in both cases.

The *Wartell* case was filed in the United States District Court for the Central District of California. A document entitled, "Application of Non–Resident Attorney to Appear in a Specific Case" was prepared and signed by Respondent, under the penalty of perjury, on or about May 10, 2007. The Application indicated that Respondent's "out-of-state business information" was as follows: Law Offices of Joel D. Joseph, 7272 Wisconsin Avenue, Suite 300, Bethesda, Maryland 20814. It also contained the following statement: "I am not a resident of, nor am I regularly employed, engaged in business, professional or other activities in the State of California. I am not currently suspended or disbarred in any court." The Application indicated that Respondent was barred only in Maryland and that he was also admitted to practice before the Supreme Court of the United States and the United States Courts of Appeal for the 1st, 2nd, 4th, 6th, 7th, 9th, and 10th Circuits. Respondent gave the application to Brewer; it was then signed by Moss and filed on June 28, 2007.

The *K–2* case was a class action suit filed in the Superior Court of California, County of Los Angeles. Brewer prepared the Application of Joel D. Joseph *Pro Hac Vice,* using the information provided by Respondent in the *Wartell* application. The application was dated June 15, 2007 and signed by both Respondent and Moss. The caption in the upper left hand corner of the Application indicated that the address for the Law Offices of Joel D. Joseph was 7272 Wisconsin Avenue, Suite 300, Bethesda, Maryland 20814. The application included the Declaration of Joel D. Joseph in Support of *Pro Hac Vice* Application, which was dated June 15, 2007 and signed under the penalty of perjury by Respondent. It represented, *inter alia,* that Respondent's out-of-state address was also 7272 Wisconsin Avenue, Suite 300, Bethesda, Maryland 20814. It also included the statement, "I am not a resident of, nor am

I regularly employed, engaged in substantial business, professional or other activity in the State of California." Both the application and the declaration were filed on June 19, 2007.

As the hearing judge stated:

On or about June 18, 2007, Brewer received a phone call from Brandie Burroughs of the Office of Special Admissions & Specialization of the State Bar of California, concerning Respondent's Application for Admission *Pro Hac Vice* in the *K–2* case. Borroughs told Brewer that the California State Bar had the *pro hac vice* application[ ], but [it] provided a Maryland office address. [The Bar] wanted Respondent's residence address and would not approve the application[ ] until [it] had the address where Respondent lived. Brewer agreed to provide this information. Subsequently, Brewer received a form via facsimile from Burroughs. The form indicated that a residential address is a requirement according to Rule 9.40, and that a residential address for the out-of-state applicant was not included in the application.[7]

Brewer left the Respondent a telephone message informing him about the California State Bar's request. Brewer recalled that she left the following message: "We have to have your residence address, the address where you live."

On or about June 21, 2007, Brewer received an email sent by Respondent to Moss. The email contained the following information: "My residence address in Maryland is 4938 Hampden Lane, Apt. 118, Bethesda, MD." Brewer entered the information provided by Respondent on the form provided by the State Bar of California on the line indicating "Residential address f/Joel D. Joseph." Although the email used the designation "Apt. 118," Brewer wrote "# 118" on

---

7. The rule applicable to the filing in the Superior Court of California, County of Los Angeles provides in part that "No person is eligible to appear as counsel *pro hac vice* under this rule if the person is:
 (1) A resident of the State of California;
 (2) Regularly employed in the State of California; or
 (3) Regularly engaged in substantial business, professional, or other activities in the State of California."
 California Rules of Court, Rule 9.40(a).

the memo. She testified that she did so because there was not a lot of room provided. Respondent then came into the office and signed the form. At that time, Brewer asked Respondent about the address and Respondent told her that it was an apartment where he lived with his girlfriend. Brewer then returned the form to the State Bar.

After the *Wartell* and *K–2* filings, Moss and Respondent agreed to act as co-counsel in a class action in which Moss already represented a plaintiff, *John Doe v. Panera LLC*. This case was also filed in the Superior Court of the State of California for the County of Los Angeles. On or about November 6, 2007, Brewer prepared an Application for Admission *Pro Hac Vice* for Respondent's admission in the *Panera* case. She again used the information previously provided by Respondent. The caption in the upper left hand corner of this document provided that the Law Offices of Joel D. Joseph had an address of 4938 Hampden Lane, Suite 118, Bethesda, Maryland 20814. Brewer used this address because Respondent told her that he was not only living at that address with his girlfriend but was also working out of the apartment.

A document titled Declaration of Joel D. Joseph in Support of *Pro Hac Vice* Application was also included with this Application. The Declaration was also signed by Respondent under the penalty of perjury. The Declaration contained the representations that: "My out-of-state address is as follows: Law Offices of Joel D. Joseph, 4938 Hampden Lane, Suite 118, Bethesda, Maryland 20814" and that "I am not a resident of, nor am I regularly employed, engaged in substantial business, professional or other activity in the State of California. . . ." The Application and Declaration were filed by Brewer on November 18, 2007, with the Superior Court.

In early June, 2007, Brewer learned that Respondent maintained an apartment located on Ocean Avenue in Santa Monica, California. The apartment came to Brewer's attention when she arranged for her husband to pick Respondent up and drive him to a mediation hearing in a case Moss was

handling for her husband. Brewer was familiar with the building and believed it had small units and catered to people that stayed there temporarily. Respondent told Brewer that he rented the apartment because it was cheaper than staying in a hotel when he came to California several times a month.

Moss moved his law practice to another office in December 2007. The testimony of Ms. Brewer clarifies that the new office was within a suite of offices that Mr. Moss owned in the same building. At that time, Respondent agreed to rent office space from Moss. Respondent occupied that space from December 1, 2007 until mid-October 2008. Brewer's testimony revealed that she was able to see Respondent come and go from the office from where she did her work for Mr. Moss. The hearing judge found that Respondent came into the office sporadically, sometimes he would be gone for a week or ten days and other weeks he would be in the office every day.

In early May 2008, Brewer received a phone call from opposing counsel in the *Panera* case. The caller told Brewer that Respondent's name did not appear on the online list of members of the Maryland Bar.

The hearing judge found that Brewer called Respondent and told him that he was not in good standing with the Maryland Bar, and Respondent told Brewer he did not pay his "bar dues" and would take care of it. Moss was distressed about Respondent's failure to remain in good standing with the Maryland Bar because his admission in the California cases was conditioned on his good standing in Maryland. About a week later, Brewer contacted the Client Protection Fund of the Bar of Maryland and confirmed that Respondent had been reinstated. During her conversation with the Client Protection Fund, Brewer was asked to verify that the Ocean Avenue address was the correct address for Respondent. As the hearing judge stated: "This caused Brewer to question why Maryland would send dues notices to a California address if Respondent lived and practiced in Maryland."

The hearing judge also found that:

There came a time in 2008 when Moss asked Respondent to withdraw his appearance in the *K–2* and *Panera* cases. At the time, Respondent was still occupying the office space he rented from Moss. Respondent told Moss that he had become engaged and was now living full time in California. Moss told Respondent that he could not be admitted *pro hac vice* anymore and had to withdraw. Thereafter, Brewer prepared the necessary documents to withdraw Respondent's appearances.

In October 2008, after Respondent vacated the office space rented from Moss, Brewer came across a letter Respondent had written to the plaintiff in [the] *Wartell* [case] on or about April 3, 2007, which Brewer had not seen before. In this letter, Respondent informed Wartell that he had "moved to Santa Monica recently."

Brewer provided Petitioner with a copy of a complaint filed by Respondent, *pro se,* on or about June 5, 2007. Whole Foods Market California was named as the defendant. In the complaint, filed in the Superior Court for the State of California County of Los Angeles, Respondent represented that: "Venue is proper in this County as the acts upon which this action is based occurred in part in this County. Plaintiff resides here. . . ." In the *Whole Foods* complaint, Respondent represented that his address was 1223 Wilshire Blvd., Suite 1413. This was the address of a UPS Store or other mailbox rental business. There are no residences or other offices at that address.

Brewer also determined that the Hampden Lane address that Respondent told her was an apartment [in Maryland] was actually a UPS store.

The hearing judge also found that "Petitioner presented other documentary evidence that established the following:

Respondent, on or about April 9, 2007, sent a check in the amount of $205.00 to the Client Protection Fund. The check was written on an account at U.S. Bank. The address appearing on the check is 1431 Ocean Ave. Apt 620, Santa Monica, California. On April 27, 2007, the Client Protection

Fund of the Bar of Maryland sent Respondent a letter concerning this check at the Ocean Avenue address.

Business records provided by the UPS Store indicated that, on or about July 13, 2007, Respondent applied for his mail to be received by the UPS Store located at 4938 Hampden Lane. The form signed by Respondent proved that the applicant's 'home address' was 1223 Wilshire Blvd., # 1413, Santa Monica, CA, 90403. The UPS Store was authorized to receive mail for both Respondent and the Made in America Foundation, a non-profit business operated by Respondent.[8]

The application does not mention the Law Offices of Joel D. Joseph. Respondent provided the UPS Store with his California Driver License with a date issued of May 14, 2007. The California Driver License displayed the 1223 Wilshire Blvd. address. This address is neither a residence nor an office. It is a private mailbox business similar to the UPS Store.

On March 14, 2008, Respondent sent Bar Counsel a letter in which he represented that he had "recently relocated to California." The return address provided on the letter was Moss'[s] office: 1717 Fourth Street, Santa Monica.

On October 29, 2008, in a matter before the Circuit Court for Montgomery County, Respondent testified as follows:

Q. Mr. Joseph, when did you move to Santa Monica, California?

A. I left Washington, D.C., I believe January 31, 2007.

Q. All right, and at that point in time, you were—

The Court: I'm sorry, say it again? You left D.C., January?

Mr. Joseph: 31, 2007.

The Court: When you say, D.C., do you mean Bethesda?

Mr. Joseph: Actually, I lived in Chevy Chase. So Chevy Chase, Maryland. I left Chevy Chase, Maryland—

---

8. This was referred to previously, and by Respondent in the UPS application, as the Made in the U.S.A. Foundation.

The Court: But that was your business address, was in Maryland, not in D.C.?

Mr. Joseph: My home and—my home was in Chevy Chase, Maryland and my office was in Bethesda, Maryland.

By Ms. Ridgell:

Q. And did you move directly from Maryland to the 1717 4th Street location in Santa Monica?

A. No, that's an office. My residence when I first moved there was 1431 Ocean Avenue.[9]

During his deposition in these proceedings, Respondent testified that the 7272 Wisconsin Avenue address was office space he leased in a commercial building. He vacated the office at the end of January 2007.

Respondent acknowledged that the Hampden Lane address was a UPS Store and that he did not have an actual office or residence there.

From 2006 to the end of January 2007, Respondent maintained a condominium on Wisconsin Avenue/Somerset Lane in Chevy Chase, Maryland. Respondent rented this property until the end of January 2007. After that he rented no other apartments or condominiums in Maryland. He owned no real estate in Maryland in 2007. At one time he owned residential property at 8022 Cyprus Grove Lane, Cabin John, Maryland, however, as of 2004, he no longer owned this property.

In 2007, Respondent owned one motor vehicle. It was registered in Maryland as of January 31, 2007, however, Respondent registered the vehicle in California in mid–2007. In 2007, he also had a leased vehicle that was registered in Maryland. He stopped leasing this vehicle during 2007 and did not lease another.[10]

---

9. This testimony, relating to a hearing on October 29, 2008, is from a prior disciplinary proceeding, *Attorney Grievance Comm'n v. Joseph,* No. 5, September Term, 2007, now pending before this Court.

10. There is some discrepancy between the Respondent's deposition testimony and his testimony at the disciplinary hearing. At the hearing,

Respondent testified that he was registered to vote in Maryland during 2007. Respondent had not advised the election board of the address where he resided in 2006 through the end of 2007. He has not voted in Maryland since prior to 2007.

On or about March 1, 2007, Respondent entered into a lease to rent an apartment at 1431 Ocean Avenue in Santa Monica. The lease was for a period of 12 months. The apartment had kitchen and bath facilities. The Respondent kept his clothing and personal effects at this location. This was the only residential property Respondent rented in California during 2007. He stopped using the Ocean Avenue apartment in December 2007 because he got engaged.

Although Respondent had a valid Maryland Driver's license at the time, he obtained a California license on May 14, 2007. He used the Wilshire Blvd. address for privacy reasons. Respondent testified that he got a California license because he was told by a California police officer that if he lived in California for 30 days or more he had to get a California driver's license.[11]

Respondent opened a bank account in California in 2007.

As of June 2010, Respondent maintained an office at 9935 South Santa Monica Blvd. He rents this property. He runs a nonprofit foundation, the Made in the USA Foundation, and practices law from this location.[12]

---

Respondent acknowledged that he registered the one car he owned in California in mid–2007. He also said, however, that his leased vehicle was registered in Maryland and not turned in until sometime in 2008.

**11.** There is some confusion as to the expiration of Respondent's Maryland license. In his deposition, referenced in the hearing judge's findings of fact, Respondent said he thought the license had expired. Ms. Brewer, however, obtained a copy of the Maryland Driver's License from the Respondent, and date of issuance was May 2003, and the expiration is not until May 14, 2013. The license was offered into evidence. The address on the license was the Maryland property that Respondent has not owned since 2004.

**12.** Although not charged with the unauthorized practice of law, it is worth noting that MRPC 5.5(a) provides that "a lawyer shall not

In 2007, Respondent began using the post office box service at 1223 Wilshire Boulevard. He stopped using the service at the end of 2007.

Respondent filed tax returns with a California address and paid taxes in California in 2008 and 2009. He paid no income taxes in Maryland in 2008 or 2009. In 2007, Respondent had no interest of any kind in rental property [in Maryland], other than the post office box. In 2007, 2008, and 2009, he owned no property in Maryland.

[Respondent testified that] when he moved to California it was his intent to get the two cases filed and to monitor two other cases that he had in California. Those cases were filed in 2001 and 2002. He did not have the intent to move to California permanently. Originally, Respondent had arranged with another firm in California to handle the *Wartell* case and planned to remain in Maryland. This firm backed out. Since the statute of limitations was approaching, Respondent wanted to make sure that the complaint was actually filed so he went to California and got local counsel.

Respondent testified that the definition of the term "resident" is a moving target and that he did not intentionally lie to or mislead any court or to any person about his residential status.

Respondent testified that he and his wife are still not sure where they are going to reside permanently. He has not registered to vote in California and considered that he was "still up in the air about where [he] is a permanent resident...." [13]

---

practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction...." *See Attorney Grievance Comm'n v. Velasquez*, 380 Md. 651, 846 A.2d 422 (2004) (holding that a Maryland attorney should be disbarred after practicing law in Virginia without being admitted to the Virginia Bar).

13. During oral argument, in this Court, Respondent acknowledged that he is, now, a California resident because he made the "crucial change" of switching his voter registration from Maryland to California.

With regard to the representations in the *Whole Foods* complaint filed by Respondent on June 5, 2007, Respondent testified that he just copied a form pleading that said he was a resident, that it was not necessary for venue in the case that he be a resident of California, and that the complaint was not signed under oath. Also, he considered himself to be a temporary resident of California when the complaint was filed. He asserted that the representation that he was a resident did not deceive any court or party.

On cross-examination, Respondent acknowledged that, although he considered himself a temporary resident of California when he filed the complaint, he did not indicate that information on the complaint. He testified that, in retrospect, he made a mistake with the court and should have said he was a temporary resident or not said resident at all.

Respondent also testified, however, that he did not consider himself to be a temporary resident of California when he prepared and signed the Application for Admission *Pro Hac Vice* that was filed on June 28, 2007, in the United States District Court for the Central District of California.[14] Respondent stated that he did not consider the representations to be inconsistent.

Although Respondent testified that he still considered himself a resident of Maryland, he filed income tax returns and paid income taxes in California for tax years 2008 and 2009. He did not pay income taxes in Maryland in 2008 or 2009.

After January 31, 2007, Respondent had no apartment, condominium, house or place to live other than the Ocean Avenue apartment.

## CONCLUSIONS OF LAW

Judge Dugan concluded that there was clear and convincing evidence that Respondent violated MRPC 3.3(a)(1), as he was

---

**14.** The title for the *pro-hac vice* application in the United States District Court for the Central District of California is actually, "Application of Non–Resident Attorney to Appear in a Specific Case."

not candid in his applications for admission *pro hac vice* filed in California state and federal courts. The judge also found that Respondent engaged in dishonesty, deceit and misrepresentation in violation of MRPC 8.4(c), and that his dishonest and deceptive conduct was prejudicial to the administration of justice because it was "likely to bring the legal profession into disrepute," in violation of MRPC 8.4(d). We excerpt portions of his ruling below:

There is clear and convincing evidence that Respondent left Maryland on January 31, 2007, and traveled to California with the intent to reside and/or live there. Respondent's intent may be inferred from his actions and their natural consequences beginning in January 2007. *See, e.g., Attorney Grievance Comm'n v. Smith,* 405 Md. 107, 121, 950 A.2d 101, 108 (2008) (a person's intent must be judged in light of the circumstances attending his actions, including their natural and inevitable consequences), citing, *Lee v. State,* 65 Md.App. 587, 592–94, 501 A.2d 495, 498 (1985), *Blount v. Boston,* 351 Md. 360, 368, 718 A. 2[d] 1111, 1115 (1998) (Intent may be more satisfactorily shown by the acts of the individual, rather than by his words and is best shown by objective factors.)[.]

Respondent's conduct and contemporaneous statements provided clear and convincing evidence that he intended to live and/or reside in California after January 31, 2007. Within a few weeks of his arrival he entered into a lease for an apartment residence on Ocean Avenue in Santa Monica for a period of 12 months. Respondent admitted that, at the time he rented the apartment, he intended to stay in the apartment for at least 12 months.

Prior to April 9, 2007, he opened a bank account in a California bank using the address of the apartment he leased. Respondent received mail at the Ocean Avenue address. On April 27, 2007, correspondence from the Client Protection Fund of the Bar of Maryland was sent to Respondent at the Ocean Avenue, Santa Monica, California address.

On May 14, 2007, even though he had a valid Maryland Driver's License at the time, he obtained a California Driver's License because he was told by a California police officer that if he **lived in California** for 30 days or more he had to get a driver's license.

On or about June 5, 2007, Respondent represented in a civil complaint he filed as a plaintiff in the Superior Court of California for the County of Los Angeles that he resided in Los Angeles County, California, and that he was a 'California resident and citizens [sic] who purchased ... coffee in the State of California during the past three years....'

Respondent's choice of words in other statements made in 2007 and 2008 provide further evidence that Respondent was not merely visiting or temporarily staying in California but intended to live there for the foreseeable future. Respondent wrote to his client Arthur Wartell on or about April 3, 2007, and informed him that he had **moved to** Santa Monica recently. On March 14, 2008, Respondent wrote to Bar Counsel that he had **recently relocated** to California and was applying for membership in the California Bar. In his letter to Bar Counsel, Respondent used a California return address. On October 29, 2008, Respondent testified in another matter before the Circuit Court for Montgomery County that he **moved to** California on January 31, 2007 and that his **residence** when he first moved was located at 1431 Ocean Avenue in Santa Monica.

In addition, Respondent maintained no real connection with Maryland. He had neither a residence nor a business office in Maryland after January 31, 2007. At that time, he no longer rented either living or office space. The only evidence Respondent can point to to show that he was a resident of Maryland after January 31, 2007, are the facts that he authorized the UPS Store to receive mail on his behalf and on behalf of the Made in America Foundation [15] and did not cancel his voter registration. In Maryland,

---

15. This was referred to previously, and by Respondent in the UPS application, as the Made in the U.S.A. Foundation.

evidence that a person is registered to vote is ordinarily persuasive and should be given considerable weight when the question of domicile is a[n] issue. While evidence of the *exercise of suffrage* in a certain place is not conclusive and may be overbalanced by other circumstances. *Comptroller v. Lenderking*, 268 Md. 613, 619, 303 A.2d 402, 405 (1973). In this case, Respondent did not vote in Maryland after January 31, 2007.

Since the Application for Delivery of Mail Through Agent signed by Respondent is dated July 13, 2007, from January 31, 2007 until that date, Respondent had no connection to Maryland other than the voter registration. Furthermore, the UPS Store records indicated that mailbox number 118 was closed on May 31, 2008, and another box was not opened by Respondent until December 5, 2008. Between those two dates, Respondent was again without even a rented mailbox on which to base his claim that he was a resident of Maryland.

Respondent had a duty to be candid with the Court. This duty required not only that he refrain from misrepresentations but that he correct any false information previously provided. *See, e.g., Attorney Grievance Comm'n v. Bleecker*, 414 Md. 147, 176, 994 A.2d 928, 945 (2010) (A lawyer's failure to correct an earlier misrepresentation to the Court violated MRPC 3.3(a).)[.] Respondent failed to honor that obligation when he falsely represented that he was not a resident of California in the applications for admission *pro hac vice* on June 19, June 28, and November 16, 2007. He, therefore, violated MRPC 3.3(a) and 8.4(c).

In addition, the Respondent[ ] represented that he maintained a law office at 7272 Wisconsin Avenue, Suite 300, Bethesda, Maryland, in the applications filed in June 2007 in the *Wartell* and *K–2* cases. These representations were false and misleading, in that, at the time, he no longer had such an office. On the *Panera* application, which was filed in November 2007, after the State Bar of California inquiries, Respondent represented that he had a law office at 4938 Hampden Lane, Suite 118, Bethesda, Maryland, when

in fact he had no such office. These misrepresentations concerning the location of his law office also violated MRPC 3.3(a) and 8.4(c).

The rules governing admissions in both Federal and California State Courts used the term "resident." [16] While

---

**16.** The rule governing admission *pro hac vice* in the United States District Court for the Central District of California provided, in relevant part:

**L.R. 83–2. Attorneys—Admission, Substitution and Withdrawal, Communications with Court**

L.R. 83–2.1 Appearance Before the Court. An appearance before the Court on behalf of another party or a class may be made only by an attorney admitted to the Bar of or permitted to practice before this Court.

. . . .

L.R. 83–2.3 Pro Hac Vice or Other Limited Appearance . . .

L.R. 83–2.3.2 Disqualification from Pro Hac Vice Appearance. Unless authorized by the Constitution of the United States or Acts of Congress, an applicant is not eligible for permission to practice pro hac vice if the applicant:

(a) Resides in California; or

(b) Is regularly employed in California; or

(c) Is regularly engaged in business, professional, or similar activities in California.

. . . .

L.R. 83–2.8.2 Pro Hac Vice Appearance. Each applicant for permission to appear pro hac vice shall file an Application of Non–Resident Attorney to Appear in a Specific Case and a separate proposed Order and pay the applicable fee. Attorneys employed by the United States Department of Justice specially appointed by the United States Attorney General to conduct any kind of legal proceeding, civil or criminal, pursuant to 28 U.S.C. § 515(a), may appear without filing an Application of Non–Resident Attorney to Appear in a Specific Case.

As mentioned previously, the rule applicable to the filing in the Superior Court for the State of California, County of Los Angeles provided in relevant part:

**Rule 9.40. Counsel pro hac vice**

**(a) Eligibility** A person who is not a member of the State Bar of California but who is a member in good standing of and eligible to practice before the bar of any United States court or the highest court in any state, territory, or insular possession of the United States, and who has been retained to appear in a particular cause pending in a court of this state, may in the discretion of such court be permitted upon written application to appear as counsel *pro hac vice*, provided that an active member of the State Bar of California is associated as attorney of record. No person is eligible to appear as counsel *pro hac vice* under this rule if the person is:

(1) A resident of the State of California;

the rules do not expressly define the term "resident," it is apparent that the purpose of the rules is to keep lawyers who are admitted in jurisdictions other than California from moving to California, establishing a residence, being regularly employed or regularly engaging in substantial business, professional or other activities in California, from using the *pro hac vice* admission rules to engage in the practice of law in California without going through California's admissions process. That issue was addressed in *Paciulan v. George, et. al,* 38 F.Supp.2d 1128 (N.D.Ca.1999), *aff'd,* 229 F.3d 1226 (2000), *cert. denied,* 531 U.S. 1077, 121 S.Ct. 775, 148 L.Ed.2d 673 (2001), a case in which the plaintiffs, California residents who were admitted to practice law in jurisdictions other than California, challenged the constitutionality of a California rule of Court, which prohibited California residents from appearing *pro hac vice* in state court.... The United States District Court dismissed the complaint and found that there was a rational basis for California to limit *pro hac vice* admissions to non-residents in order to prevent California residents from using the rule to circumvent the State's stringent Bar membership requirements.

Furthermore, there is clear and convincing evidence that Respondent engaged in conduct involving dishonesty, fraud, deceit and/or misrepresentation, in violation of MRPC 8.4(c), in his communications with the State Bar of California, Brewer and Moss. It is clear from Respondent's communications with Brewer that he understood that the State Bar of California was trying to obtain the address of his residence in the usual sense of the word. Brewer testified that, after she spoke with the representative of the California Bar, she made it clear to Respondent that they were looking for the address of the place where he lived. Respondent obviously understood that the Bar Association was requiring that he

(2) Regularly employed in the State of California; or
(3) Regularly engaged in substantial business, professional, or other activities in the State of California.

provide a residential address because he referred to the mailbox number as "Apt. 118." Respondent also told Brewer that he lived with his girlfriend at an apartment located at the Hampden Lane address and conducted his law practice there. Respondent clearly knew that both of these representations were false. These misrepresentations also constituted violations of MRPC 8.4(c).

Respondent testified at trial that he presently believed that he is a domiciliary of the State of Maryland and was, at all relevant times, a domiciliary of the State of Maryland. He indicated that his arrangement with the UPS Store to receive his mail and the fact that he was still registered to vote in Maryland was evidence of the fact that he is a domiciliary of Maryland. In light of the conduct and representations in 2007 and 2008, Respondent's testimony is not credible. Furthermore, if Respondent actually believed that renting a mailbox and being on the voter roles in Maryland made him a resident of Maryland for purposes of the applications for admission *pro hac vice*, it would not have been necessary for Respondent to mislead Brewer and Moss by using the designation "Apt." on the email and by telling Brewer that the Hampden Lane address was an apartment where he lived with his girlfriend and from which he conducted his practice of law in Maryland.

The issue here, however, does not rest on the technical definition of resident/domiciliary for voting or other purposes. Rather, the issue at the heart of this matter is whether Respondent was candid and/or truthful when he represented to the California Courts that he was not a resident of California for purposes of the rules governing admission to the Courts in which he sought to practice. Was Respondent truthful when, knowing that 4938 Hampden Lane was the address of a mailbox rental business, he represented to Moss, Brewer and the State Bar of California that his "residence address in Maryland [was] 4938 Hampden Lane, Apt. 118, Bethesda, MD?" Was he truthful when he signed the form that he knew would be returned to the State Bar of California that indicated that his "residen-

tial address" was 4938 Hampden Lane, # 118, Bethesda, MD? The answer to these questions is no.

Respondent's testimony concerning the *Whole Foods* complaint, assuming *arguendo* that it was truthful, contradicted Respondent's contention that he believed he was not a resident of California for purposes of the *pro hac vice* applications. In an attempt to explain his representations that he was a California resident in the *Whole Foods* complaint, Respondent testified that he believed he was a "temporary resident" of California when he filed the complaint on June 7, 2007. It follows, therefore, that Respondent made intentionally false and/or misleading representations that he was not a resident, temporary or otherwise, of California in his subsequent applications filed in the *Wartell, K–2* and *Panera* cases.

Respondent's interpretation of the terms "residence" and "domicile" leads to the absurd conclusion that renting a mailbox in Maryland would establish residence and/or domicile in Maryland. If so, Respondent established his residence and/or domicile in California when he entered the agreement to receive his mail with the California UPS Store located at 1223 Wilshire Boulevard in Santa Monica, California.

In support of his position that he was and remains a resident of Maryland, Respondent submitted a memorandum from an Assistant Attorney General to all Clerks of Circuit Courts dated September 20, 2004. Respondent did not testify or offer other evidence that he relied on the representations contained in the memorandum at the time he was engaging in the conduct in question. The memorandum pertains to Tax–General § 10–912(d)(1) and attempts to answer the question: Who is a "Resident?" The opinion in this memorandum is, of course, not binding on this Court and, in any case, only applies for purposes of the Tax–General Article. Furthermore, the information contained in the memorandum does not support Respondent's contention that a rented mailbox and voter registration made him a resident of Maryland.

According to the memorandum, the term "resident" means: an individual, other than a fiduciary, who is domiciled in Maryland on the last day of the taxable year or for more than 6 months of the taxable year, maintained a place of abode in this State, whether domiciled in the State or not.[17] According to the memorandum the term "domicile" has been defined as the place where a natural person has his or her true, fixed, permanent home, without any present intention of removing therefrom, and to which he or she has, whenever away, the intention to return. A natural person can have only one domicile at a time. Respondent did not have a fixed, permanent home in Maryland as of the last day of 2007 and did not maintain a place of abode in Maryland for 6 months of the tax year. After January 31, 2007, his only residence and/or place of abode was in California.

Respondent suggested that, if he had the financial resources to maintain an apartment in Maryland, the present disciplinary action would not have been brought. Had Respondent actually maintained a residence in Maryland

---

**17.** This memorandum further illuminates our discussion, *infra,* that where the word "resident" in a statute is interpreted to be synonymous with "domicile," then the rules pertaining to domicile are applicable. It is clear, however, that the *pro hac vice* statute at issue in the instant case does not intend this synonymous interpretation. Our recently decided case, *Boer v. Univ. Specialty Hospital,* 421 Md. 529, 27 A.3d 175 (2011) is instructive because it illustrates that "residence" and "domicile" are distinct concepts. In that case, the statute at issue, Maryland Estates and Trusts Article § 8–104(c), permitted a creditor to file a claim with the register of wills in any of three counties: where the decedent was domiciled, where the decedent "resided" on the date of his or her death, or where real property or a leasehold interest in real property of the decedent was currently located. We held that, under the plain meaning of the statute, "residence" was to be read to retain its meaning as a place where the decedent "actually lived." We went on to determine the residence at issue by using objective indicia, without considering subjective intent inherent in the concept of domicile. *See also Cathey v. Board of Review, Department of Health and Mental Hygiene,* 422 Md. 597, 31 A.3d 94, 2011 WL 5042384 (2011) (holding that, under the applicable department regulation, "residence" was not synonymous with "domicile," in accordance with legislative intent).

after January 31, 2007, his argument that he was a resident would certainly be stronger, however, that factor alone would not establish that he was a resident of Maryland. Although actual residence and voting in a jurisdiction have been considered the most important objective circumstances indicating domicile, numerous other factors are also pertinent to show a person's intent. These include such things as: paying taxes, statements on tax returns, ownership of property, where the person's children attend school, the address at which one receives mail, statements as to residency contained in contracts or other documents, statements on licenses or governmental documents, where furniture and other personal belongings are kept, which jurisdictions' banks are utilized, membership in professional, fraternal, religious or social organizations, where one's regular physicians and dentists are located and where one maintains charge accounts. *Blount v. Boston*, 351 Md. 360, 369–370, 718 A.2d 1111, 1116 (1998).

In an effort to justify his misrepresentations in the applications filed with the Courts, Respondent pointed out that he did not have to obtain admission *pro hac vice* and could have just been out-of-state counsel and that it was Moss who wanted him to proceed in that manner and Respondent agreed to do so. The Rules of Professional Conduct require that a lawyer's representations to a Court must be truthful and candid, whether the representation was required or voluntary.

A lawyer is intimately associated with the administration of the law and should rightfully be expected to set an example in observing the law. Public confidence in the legal profession is a critical facet of the proper administration of justice. *Attorney Grievance Comm'n v. Clark*, 363 Md. 169, 183, 767 A.2d 865, 872 (2001). An attorney engages in conduct prejudicial to the administration of justice, in violation of MRPC 8.4(d), when his or her conduct negatively impacts on [sic] the efficacy of the courts or legal profession. *Attorney Grievance Comm'n v. Rand*, 411 Md. 83, 96, 981 A.2d 1234, 1242 (2009).

Respondent engaged in conduct prejudicial to the administration of justice, in violation of MRPC 8.4(d), when he filed applications for admission *pro hac vice* that contained misrepresentations and when he provided false and misleading information to Moss, Brewer and the State Bar of California. . . .

## STANDARD OF REVIEW

We explained in *Attorney Grievance v. Sapero*, 400 Md. 461, 478, 929 A.2d 483, 493 (2007):

This Court has original and complete jurisdiction over attorney disciplinary proceedings. *Attorney Grievance Comm'n v. Cherry–Mahoi*, 388 Md. 124, 152, 879 A.2d 58, 76 (2005) (citations omitted). As noted in *Attorney Grievance Comm'n v. Mahone*, 398 Md. 257, 265–66, 920 A.2d 458, 463 (2007): "We accept a hearing judge's findings of fact unless we determine that they are clearly erroneous. *Attorney Grievance Comm'n v. Guida*, 391 Md. 33, 50, 891 A.2d 1085, 1095 (2006). As to the scope of our review, we take into consideration whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b). This Rule provides that Bar counsel has the burden of proving the averments of the petition by clear and convincing evidence, and the attorney who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter of mitigation or extenuation by a preponderance of the evidence. *Guida*, 391 Md. at 50–51, 891 A.2d at 1095 (citing Rule 16–757(b)). 'Weighing the credibility of witnesses and resolving any conflict in the evidence are tasks proper for the fact finder.' *State v. Stanley*, 351 Md. 733, 750, 720 A.2d 323, 331 (1998). With regard to the hearing judge's conclusions of law, our review is *de novo*. *Attorney Grievance Comm'n v. Harrington*, 367 Md. 36, 49, 785 A.2d 1260, 1267–68 (2001)."

## DISCUSSION

In his written exceptions, Respondent challenged the hearing judge's statement that he did not file proposed findings of

fact and conclusions of law. Respondent had, in fact, filed proposals, which were overlooked by the hearing judge. This exception was addressed when this Court remanded the case to Judge Dugan to consider Respondent's proposals. On remand, Judge Dugan considered Respondent's filing, reviewed the record, and subsequently issued an order reaffirming the previous findings of fact and conclusions of law. Respondent then filed a second set of exceptions, encompassing and expanding upon his original points. We will address each in turn, and overrule them all.

Respondent contends that "the Circuit Court did not make its own findings, which it was required to do by clear and convincing evidence." Respondent continues, "[t]he Circuit Court accepted in toto the proposed findings of fact of the [P]etitioner," and states that the findings "distort every factual determination against [R]espondent." Respondent also challenges the fact that, upon remand, after considering his proposals, "Judge Dugan did not change one word of the proposed findings submitted by the Attorney Grievance Commission."

■ A judge hearing an attorney grievance matter does not need to meld together his or her own opinion, taking bits and pieces of each party's proposed findings of facts and conclusions of law, but may adopt one party's filing in its entirety, as long as it accurately reflects the judge's independent factual findings, proven by clear and convincing evidence at the hearing, and the legal conclusions flowing therefrom. *See Attorney Grievance Comm'n v. Theriault*, 390 Md. 202, 205–06, 888 A.2d 292, 294 (2005) (noting that the hearing judge adopted petitioner's proposed findings of facts and conclusions of law as its own); *Attorney Grievance Comm'n v. Dunietz*, 368 Md. 419, 422, 795 A.2d 706, 707 (2002) (same); *Attorney Grievance Comm'n v. Foltz*, 411 Md. 359, 396, 983 A.2d 434, 456 (2009) (noting that the hearing judge reviewed Respondent's proposed findings of facts and conclusions of law, despite its lateness, but concluded that it did not alter the judge's findings of facts and conclusions of law); *Attorney*

*Grievance Comm'n v. Keister,* 327 Md. 56, 60, 607 A.2d 909, 911 (1992) (noting approvingly that "[h]aving requested, and received from each of the parties, proposed findings of fact and conclusions of law, [the hearing judge] accepted the petitioner's submi[ssion] and rejected the respondent's.").

 Respondent also challenges the factual findings of the hearing judge, asserting that they were not based on clear and convincing evidence, and the legal conclusions emanating therefrom. He states that:

> Petitioner claims that [R]espondent stated falsely to two courts in California that he was a resident of Maryland in 2007. In actual fact [R]espondent was a resident and domiciliary of the State of Maryland at that time and there was no false statement at all.
>
> The Peer Review Panel voted four to three in this case. Apparently, three of [R]espondent's peers believed that he was a resident of Maryland in 2007, or that Mr. Joseph did not make false statements about his residency. This demonstrates that there was hardly ... "clear and convincing" evidence against [R]espondent.

First, our case law makes clear that peer review proceedings are informal, confidential and privileged. Md. Rule 16–723(a); [18] *Attorney Grievance Comm'n v. Kinnane,* 390 Md. 324, 336–38, 888 A.2d 1178, 1186–87 (2005) (citing *Attorney Grievance Comm'n v. Lee,* 387 Md. 89, 108–10, 874 A.2d 897, 908–09 (2005)). The Peer Review Panel findings are not binding on the Commission. *See* Md. Rule 16–743(e); *Attorney Grievance Comm'n v. Pak,* 400 Md. 567, 597, 929 A.2d 546, 564 (2007) ("The ... findings of the Panel are recommendations to the Commission. The Commission is not under any obligation to follow the findings of the Panel."); *Kinnane,* 390

---

**18.** Maryland Rule 16–723 provides in relevant part:

**(a) Confidentiality of peer review meetings.** All persons present at a peer review meeting shall maintain the confidentiality of all speech, writing, and conduct made as part of the meeting and may not disclose or be compelled to disclose the speech, writing, or conduct in any judicial, administrative, or other proceeding.

Md. at 338, 888 A.2d at 1187 (stating that the decisions of Peer Review Panels are "not binding, and certainly not dispositive"). Further, the recommendations are not subject to discovery and are not to be considered by the hearing judge or this Court. *See Attorney Grievance Comm'n v. Usiak* 418 Md. 667, 683 n. 9, 18 A.3d 1, 10 n. 9 (2011) ("[T]he evidence that was presented to the Peer Review Panel and its assessment of that evidence, is irrelevant to our review of the evidence presented at Respondent's actual disciplinary evidentiary hearing."); *Pak*, 400 Md. at 597, 599, 929 A.2d at 564–65 ("The substance of deliberations discussed by the Panel is confidential and cannot be used in attorney grievance proceedings."); *Lee*, 387 Md. at 112–13, 874 A.2d at 910.

Also, based upon our independent review of the record, we are satisfied that the hearing judge's factual findings are supported by clear and convincing evidence. *Theriault*, 390 Md. at 209, 888 A.2d at 296; *Attorney Grievance Comm'n v. Link*, 380 Md. 405, 420, 844 A.2d 1197, 1206 (2004); *Attorney Grievance Comm'n v. Davis*, 375 Md. 131, 157–58, 825 A.2d 430, 445–46 (2003). There was clear and convincing evidence that Respondent left Maryland on January 31, 2007, traveled to California with the intent to reside there, and attempted to practice law in that state by making false or misleading statements in his *pro hac vice* applications. As of this date, Respondent had no ties to any property in Maryland. In March 2007, Respondent entered into a one-year lease for an apartment at 1431 Ocean Avenue in Santa Monica. This was the only property Respondent maintained after January 31, 2007. In April 2007, Respondent wrote a letter to the plaintiff in the *Wartell* case stating that he had "moved to Santa Monica recently," and also filed a *pro se* complaint in which he represented that venue was proper in the Superior Court of California, County of Los Angeles, because "Plaintiff resides here." As indicated by his check of April 9, 2007, sent to the Client Protection Fund, Respondent maintained a bank account in California, and used a Santa Monica, California address on his personal checks. In 2007, Respondent had his mail directed to the UPS Store at 4938 Hampden Lane,

Bethesda, Maryland and forwarded to another mail-service store at 1223 Wilshire Boulevard, Santa Monica, California. He also received mail at the Ocean Avenue address. Despite the fact that his Maryland driver's license had not expired, Respondent applied for and maintained a California driver's license, with the 1223 Wilshire Blvd. address displayed, and registered his motor vehicle in California in mid–2007.

We review the hearing judge's conclusions of law *de novo*. *Attorney Grievance Comm'n v. Harrington*, 367 Md. 36, 49, 785 A.2d 1260, 1267–68 (2001). We accept Judge Dugan's conclusions of law as legally correct under the facts of this case, and agree that Respondent violated Rules 3.3(a)(1) and 8.4(c) and (d) of the Maryland Lawyers' Rules of Professional Conduct (MRPC). Rule 3.3(a)(1) provides that "A lawyer shall not knowingly: (1) make a false statement of material fact of law to a tribunal." Accordingly, we have held that an attorney must be candid at all times with a tribunal or inquiry board. *Pak*, 400 Md. at 601, 929 A.2d at 566; *Attorney Grievance Comm'n v. Kapoor*, 391 Md. 505, 531, 894 A.2d 502, 518 (2006). An attorney must not only refrain from misrepresentations, but also correct any false information previously provided. *See, e.g., Attorney Grievance Comm'n v. Bleecker*, 414 Md. 147, 176, 994 A.2d 928, 945 (2010) (holding that a lawyer's failure to correct an earlier misrepresentation to the Court violated MRPC 3.3(a)). Rule 8.4(c) provides that an attorney may not "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Indeed, "candor by a lawyer, in any capacity, is one of the most important character traits of a member of the Bar." *Attorney Grievance Comm'n v. White*, 354 Md. 346, 364, 731 A.2d 447, 457 (1999); *Attorney Grievance Comm'n v. Myers*, 333 Md. 440, 449, 635 A.2d 1315, 1319 (1994). Rule 8.4(d) further provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." This Court has repeatedly held that conduct, which is likely to impair public confidence in the legal profession, engenders disrespect for the Court, and is therefore prejudicial to the administration of justice. *Attorney Grievance Comm'n v. Clark*, 363 Md. 169,

183, 767 A.2d 865, 873 (2001);. *Attorney Grievance Comm'n v. Childress*, 360 Md. 373, 381–82, 758 A.2d 117, 121 (2000). Each violation in this case is interconnected and encompassed in our following discussion of the applicable facts and law.

California courts do not allow *pro hac vice* admission if the applicant is a "resident" of the state. *See* Cal.Rules of Court, Rule 9.40; *Paciulan v. George*, 38 F.Supp.2d 1128, 1141 (N.D.Cal.1999) (holding that the *pro hac vice* rule is constitutional, and stating, "the issue before the Court is not whether California has promulgated the best rule" but that it is "rational for the State Bar to limit *pro hac vice* admission to non-residents to prevent California residents from using *pro hac vice* to circumvent this state's stringent bar membership requirements.")

We reject Respondent's contention that he "was a resident and domiciliary of the State of Maryland" in 2007 and therefore did not attempt to violate the California statute. The distinction between residence and domicile has been explained in California case law and is similar to our own precedent on the subject. "Domicile" is "the one location with which for legal purposes a person is considered to have the most settled and permanent connection, the place where he intends to remain and to which, whenever he is absent, he has the intention of returning." *Johnson v. Johnson*, 245 Cal.App.2d 40, 53 Cal.Rptr. 567, 569 (1966) (internal quotations and citations omitted); *accord Blount v. Boston*, 351 Md. 360, 366–68, 718 A.2d 1111, 1114–15 (1998). Conversely, " 'residence' connotes any factual place of abode of some permanency, more than a mere temporary sojourn." *Johnson*, 53 Cal.Rptr. at 569–70. " 'Domicile' normally is the more comprehensive term, in that it includes both the *act* of residence and an *intention* to remain." *Johnson*, 53 Cal.Rptr. at 570 (emphasis in original); *accord Stevenson v. Steele*, 352 Md. 60, 69, 720 A.2d 1176, 1180 (1998) (discussing the objective factors used to determine a person's intent regarding domicile, this Court has defined "residence" as the place where one "actually lives") (emphasis added). When a person leaves his or her former domicile with the intention to abandon it, the former domicile

is maintained until a new domicile has been acquired by actual residence coupled with the intention to remain. *See Walters v. Weed,* 45 Cal.3d 1, 246 Cal.Rptr. 5, 752 P.2d 443, 447 (1988); *Blount,* 351 Md. at 371, 718 A.2d at 1116–17.

In accordance with these distinctions, California courts have made clear that "residence is not [necessarily a] synonym for domicile and . . . its statutory meaning depends on context and purpose of statute in which it is used." *Whittell v. Franchise Tax Bd.,* 231 Cal.App.2d 278, 41 Cal.Rptr. 673, 676–77 (1964); *accord Smith v. Smith,* 45 Cal.2d 235, 288 P.2d 497, 499 (1955) ("Residence, as used in the law, is a most elusive and indefinite term. It has been variously defined. . . . To determine its meaning, it is necessary to consider the purpose of the act."); *see Burt v. Scarborough,* 56 Cal.2d 817, 17 Cal.Rptr. 146, 366 P.2d 498, 501 (1961) ("A person may only have one domicile at a time, but he may have more than one residence if residence is not construed to mean 'domicile.' ").

When interpreting the current *pro hac vice* rule and its predecessor,[19] the California courts have suggested that the words be "interpreted in an ordinary common sense fashion." *See Walter E. Heller Western, Inc. v. Superior Court,* 111 Cal.App.3d 706, 168 Cal.Rptr. 785, 788 (1980) (interpreting the words "activities in the state of California" "in an ordinary common sense fashion . . . to require that the activities . . . covered by the rule be performed . . . in California and not elsewhere"). While the term "resident" is not defined in the statute at issue, the courts have made clear that *pro hac vice* admission is an accommodation for "out-of-state" attorneys. *See Paciulan v. George,* 38 F.Supp.2d at 1139 (noting that defendants, who were the Justices of the California Supreme Court, explained that the *pro hac vice* rule "extends comity to out-of-state attorneys for occasional appearances in the courts of this state in order to accommodate residents who desire such counsel"). Therefore, the rule's provision against "resident" attorneys gaining *pro hac vice* admission without going

---

**19.** The former rule was Cal.Rules of Court, Rule 983.

through the California admissions process is meant to apply to those who maintain an "abode of some permanency" in the state, irrespective of their domicile. *See Johnson,* 53 Cal. Rptr. at 569–70 (" '[R]esidence' connotes any factual place of abode of some permanency, more than a mere temporary sojourn.") (internal quotations and citations omitted); *Smith,* 288 P.2d at 499 (noting that the concept of "non-residence," in certain statutes "has a more factual meaning in contemplating an actual, as distinguished from a constructive or legal residence . . .").

If Respondent did not have knowledge of this limitation when he moved to California, he most certainly was aware of it when Ms. Brewer told him, after receiving a phone call from a California Bar official, that the Bar needed his residence address, describing it as "the address where you live." At this point, Respondent chose to describe his rented UPS mailbox as either an apartment or a suite both to Mr. Moss and Ms. Brewer, and on declarations filed with the California courts, signed under the penalties of perjury. When questioned about the 4938 Hampden Lane address by Ms. Brewer, Respondent indicated, on more than one occasion, that it was an apartment where he lived with his girlfriend and had his home office.[20] As the hearing judge pointed out, if Respondent had believed that renting a UPS mailbox made him a resident of Maryland, he would not have needed to make these representations. He did so because, in fact, the only property Respondent maintained after January 31, 2007 was an apartment at 1431 Ocean Avenue in Santa Monica, California. Further, in April 2007, Respondent wrote a letter to the plaintiff in the

---

**20.** It is worth noting that, even before Ms. Brewer indicated that, indeed, the "residence address" meant a place "where you live," Respondent was indicating to the California courts that he had an office on Wisconsin Avenue in Bethesda, which he no longer had. It is clear that Respondent was dishonest from the very beginning of his relationship with Ms. Brewer and Mr. Moss. He indicated in his initial phone call to Ms. Brewer, in March 2007, that he lived in Maryland and had an office in Maryland when in fact, neither was true, as he had moved away as of January 31, 2007, and had left no residential or business property behind.

*Wartell* case that he had "moved to Santa Monica recently." In June 2007, Respondent filed a *pro se* complaint against Whole Foods Market California, Inc., alleging that their "Hawaiian Island Blend" coffee was improperly marked "Product of the USA," in which he represented that venue was proper in the Superior Court of California, County of Los Angeles because "Plaintiff resides here." [21] Thus, at no point could Respondent have reasonably believed the truthfulness of his averments in court documents that "I am not a resident of, nor am I regularly employed, engaged in business, professional or other activities in the State of California."

Respondent contends in his exceptions, as he did at oral argument before this Court, that the Illinois case, *Maksym v. Bd. of Election Commissioners*, 242 Ill.2d 303, 351 Ill.Dec. 223, 950 N.E.2d 1051 (2011), "is at the heart of this case." Respondent submitted the *Maksym* decision to the hearing judge on January 28, 2011, seven days after the court issued its order reaffirming its earlier findings of fact and conclusions of law. The case was neither adopted nor discussed by the hearing judge.

Notably, *Maksym* was recently decided by the Illinois Supreme Court and dealt with the issue of residency, with the Court stating that "to establish residency, two elements are required (1) physical presence, and (2) an intent to remain in that place as a permanent home." *Maksym*, 351 Ill.Dec. 223, 950 N.E.2d at 1060. The Illinois Supreme Court continued, "once residency is established, the test is no longer physical presence but rather abandonment. Indeed, once a person has *established* residence, he or she can be physically absent from that residence for months or even years without having abandoned it[.]" *Id.* (emphasis in original). In reliance upon *Maksym*, Respondent argues that he did not abandon his Maryland residency in 2007. He posits that he "claimed continued Maryland residency during the first year that he

---

21. The address Respondent used in this complaint, 1223 Wilshire Blvd., Suite 1413, was, in actuality, not a residential address, but a rented mailbox.

temporarily resided in California" because "he was registered to vote in Maryland and intended to remain a domiciliary of Maryland."

Respondent's reliance upon *Maksym* is misplaced. Even though *Maksym* is not controlling precedent in this Court, the case is distinguishable because it involved the Illinois Court's interpretation of an elections code. The code provision at issue in *Maksym*, 3.1–10–5(a) of the Illinois Municipal Code, mandates that a Chicago mayoral candidate "reside in" Chicago for a year preceding the election. *Maksym*, 351 Ill.Dec. 223, 950 N.E.2d at 1054. The court construed "residence" in the code provision to mean "permanent abode," *i.e.* domicile, rather than the place where the candidate "actually lives." *See Maksym*, 351 Ill.Dec. 223, 950 N.E.2d at 1061–62. As Respondent points out, the court stated that, to establish residency in the context of eligibility to vote and to hold public office, two elements are required: (1) physical presence, and (2) an intent to remain in that place as a permanent home. *Maksym*, 351 Ill.Dec. 223, 950 N.E.2d at 1060. Further, the court stated that, "once residency is established, the test is no longer physical presence but rather abandonment," and "both the establishment and the abandonment of a residence is principally a question of intent." *Id.*

As explained in both Maryland and California case law, these principles are all aspects of domicile, and are thus applicable only where "residence" is construed to be synonymous with the concept of domicile. *See e.g., Smith*, 288 P.2d at 500 (noting that the drafters of the statute at issue "regarded the words 'a resident of' and 'domiciled in' as synonymous and interchangeable"); *Blount*, 351 Md. at 366, 718 A.2d at 1114 ("The words 'reside' or 'resident,' when used in a state constitutional provision or statute delineating rights, duties, obligations, privileges, and the like is construed to mean 'domicile' unless a contrary intent be shown. 'Residence,' as contemplated by the state constitution, for political or voting purposes, means a place of fixed present domicile."); *Dorf v. Skolnik*, 280 Md. 101, 116, 371 A.2d 1094, 1102 (recognizing that "resident" meant "domicile" for purposes of defining one's

election jurisdiction); *Gallagher v. Bd. of Elections,* 219 Md. 192, 207, 148 A.2d 390, 398–399 (1959) (noting that for purposes of the Baltimore City Charter, which required that a candidate for Mayor be a resident of Baltimore City for ten years preceding the election, the Court concluded "that the framers of the Charter intended the residence required . . . to be the equivalent of a 'present, fixed domicile' " rather than "an actual and physical residence"); *cf. Boer,* 421 Md. at 538, 27 A.3d at 180 (noting that because residency under the Estates and Trusts Article section 8–104(c) was an independent alternative to domicile, it retained its definition as the place where one "actually lives.").

As we indicated previously, Respondent's reliance upon *Maksym* is misplaced. While California's *pro hac vice* statute does not define "resident," [22] it is clear, pursuant to California case law, that the statute uses the term "resident" in the ordinary, common sense fashion, meaning a place where one has an "abode of some permanency," rather than as a synonym for domicile. *See Paciulan,* 38 F.Supp.2d at 1141 (holding that it is "rational for the State Bar to limit *pro hac vice* admission to *non-residents* to prevent California residents from using *pro hac vice* to circumvent this state's stringent bar membership requirements")(emphasis added); *Walter E. Heller Western, Inc.,* 168 Cal.Rptr. at 787–88 (noting that despite frequent trips to California for legal work, the *pro hac vice* residency limitation did not apply because applicant *lived* in Phoenix, AZ and worked in a Phoenix law firm); *Smith,* 288 P.2d at 499 (noting that residence is not a synonym for

---

**22.** For example, for election purposes, Cal. Elec.Code § 349, defines "residence" as:

(a) 'Residence' for voting purposes means a person's domicile.

(b) The domicile of a person is that place in which his or her habitation is fixed, wherein the person has the intention of remaining, and to which, whenever he or she is absent, the person has the intention of returning. At a given time, a person may have only one domicile.

(c) The residence of a person is that place in which the person's habitation is fixed for some period of time, but wherein he or she does not have the intention of remaining. At a given time, a person may have more than one residence.

domicile, and its meaning is dependent upon legislative intent); *Johnson,* 53 Cal.Rptr. at 569–70 (defining residence as an "abode of some permanency").

It appears evident that Respondent's reliance on the *Maksym* case amounts to no more than a last-ditch effort to distract from the facts at issue. California's *pro hac vice* rule, unlike the election code provision in *Maksym,* inquires as to where an applicant actually lives, rather than the location of his or her domicile. Further, even if Respondent, as he seems to suggest, believed that California officials were asking for the location of his domicile, he was not truthful in declaring that his "residence" in Maryland was a UPS mailbox at 4938 Hampden Lane. *See Johnson,* 53 Cal.Rptr. at 570 (" 'Domicile'... includes both the *act* of residence and an *intention* to remain.") (emphasis in original); *accord Stevenson,* 352 Md. at 69, 720 A.2d at 1180 (defining "residence" as the place where a person "actually lives"). Even assuming, *arguendo,* that in 2007, as Respondent asserts, he was registered to vote in Maryland and intended to return, the evidence establishes, under the clear and convincing standard, that in 2007 he was a resident of California because he was actually living there for a substantial period of time. *See Johnson,* 53 Cal.Rptr. at 570 (noting that "a person may have more than one physical residence separate from his domicile, and at the same time") (internal quotation omitted). Thus, regardless of his status, his misrepresentation about where he actually lived, including misrepresentations about an office he no longer rented and a UPS box he labeled as an apartment or suite, demonstrates a clear intent to deceive the California courts. Therefore, as the hearing judge stated, this case does not depend on the legal distinction between residency and domicile, but is entirely encompassed by the Maryland Lawyers' Rules of Professional Conduct, and Respondent's duties of candor and truthfulness.

## SANCTION

As this Court has often held, sanctions for attorneys in disciplinary matters are based on our duty to protect the public and maintain the public's confidence in the legal

system rather than to punish the attorney for his or her misconduct. *Attorney Grievance Comm'n v. Powell,* 369 Md. 462, 474, 800 A.2d 782, 789 (2002); *Attorney Grievance Comm'n v. Kolodner,* 316 Md. 203, 208, 557 A.2d 1332, 1334 (1989). Sanctions for violations of the Maryland Lawyers' Rules of Professional Conduct also serve to maintain the integrity of the legal profession and to prevent misconduct by other attorneys. *Attorney Grievance Comm'n v. Blum,* 373 Md. 275, 303, 818 A.2d 219, 236 (2003)). "The severity of the sanction depends on the circumstances of each case, the intent to which the acts were committed, the gravity, nature and effect of the violations, and any mitigating factors." *Attorney Grievance Comm'n v. Ward,* 394 Md. 1, 33, 904 A.2d 477, 496 (2006).

Bar Counsel suggests that the appropriate sanction in the instant case is disbarment, whereas, Respondent urges that this case be dismissed. This Court has held that ordinarily, disbarment is the sanction for intentional dishonest conduct. *Blum,* 373 Md. at 304, 818 A.2d at 236; *Attorney Grievance Comm'n v. Vanderlinde,* 364 Md. 376, 418, 773 A.2d 463, 488 (2001). Unlike matters warranting a lesser degree of discipline, "[i]ntentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse." *Vanderlinde,* 364 Md. at 418, 773 A.2d at 488. Respondent's conduct in this case lacked candor, was dishonest, misleading, prejudicial to the administration of justice, and beyond excuse. There are no mitigating circumstances.

Accordingly, we order Respondent's disbarment.[23]

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRAN-**

---

23. Because of our ultimate disposition in this case, it is unnecessary that we take any further action in the case of *Attorney Grievance Comm'n v. Joseph,* No. 5, September Term, 2007, now pending in this Court. That case is hereby dismissed.

708

SCRIPTS, PURSUANT TO MARYLAND RULE 16–515(C), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST JOEL DAVID JOSEPH.