946 A.2d 437

## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

### David Wayne PARSONS.

**Misc. Docket AG No. 58, Sept. Term, 2006.**

Court of Appeals of Maryland.

April 15, 2008.

Fletcher P. Thompson, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Com'n), for petitioner.

No argument on behalf of Respondent.

Argued before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER (Retired, specially assigned) and DALE R. CATHELL (Retired, specially assigned), JJ.

BELL, C.J.

The Attorney Grievance Commission of Maryland, the petitioner, by Bar Counsel, acting pursuant to Maryland Rule 16–751,[1] filed a Petition For Disciplinary or Remedial Action

---

1. Maryland Rule 16–751, as relevant, provides:

against David Wayne Parsons, the respondent. The petition charged that the respondent violated Rules 5.5, Unauthorized Practice of Law,[2] and 8.4, Misconduct,[3] of the Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812.[4]

We referred the case, pursuant to Rule 16–752(a),[5] to the Honorable Pamela L. North, of the Circuit Court for Anne Arundel County, for hearing pursuant to Rule 16–757(c).[6]

---

"(a) *Commencement of disciplinary or remedial action.* (1) Upon approval of the Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

2. Pursuant to that Rule,
   "A lawyer shall not:
   "(a) practice in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction; or
   "(b) assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law."

3. Rule 8.4, as relevant, provides:
   "It is professional misconduct for a lawyer to:

   \*      \*      \*      \*      \*      \*

   "(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
   "(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.
   "(d) engage in conduct that is prejudicial to the administration of justice."

   \*      \*      \*      \*      \*      \*

4. Another charged Rule violation, Rule 8. 1, Bar Admission and Disciplinary Matters, was withdrawn at the hearing.

5. Rule 16–752(a) provides:
   "(a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

6. Maryland Rule 16–757(c) provides:
   "(c) Findings and conclusions. The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and

Although he properly was served with the petition by the petitioner, the respondent neither responded to the petition nor moved to vacate the Order of Default that the hearing court entered as a result of that failure. Following a hearing, at which testimony and documentary evidence were received and arguments offered, Judge North made findings of fact and drew conclusions of law, as follows (footnotes and citations to the record omitted):

### "False Affidavit

"Respondent was admitted to the Maryland bar on November 1, 1979.... On April 4, 1997, the Maryland Court of Appeals issued a Decertification Order prohibiting Respondent from the further practice of law in Maryland.... The Court of Appeals notified Respondent of the decertification in a letter dated April 8, 1997.... Respondent was admitted to the practice of law in the District of Columbia on November 14, 1980.... He was suspended from the practice of law in the District of Columbia on December 2, 1991....

"On December 23, 1999 (date of docketing), Respondent filed an Application for Leave to Appear Pro *H[a]c* Vice in the United States District Court in the Northern District of Illinois in the matter captioned *Securities & Exchange Commission v. Barzilay, et al.,* Case No. 99C5023.... He requested permission to represent Oleg Feldman, Stanislus Kaminsky, and Garri Zhigun in that case. On the application, Respondent stated he was a member in good standing in Maryland, the District of Columbia, and the United States District Court [for the District of] Maryland. Respondent signed the application and declared 'under the penalty of perjury that the foregoing is true and correct.' He signed the application on December 7, 1999.

conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

"In evidence is a letter from Willard Knox (Knox) on the letterhead of Paduano & Weintraub, LLP to Philip J. Berkowitz, Esquire, counsel for the National Association of Security Dealers, Inc. (NASD).... Although nothing in the letter or on the letterhead specifically states so, it appears Knox was an attorney representing Respondent in his defense against a 'Post Complaint Rule 8210 Request for Information' in an investigation of Respondent by the NASD. In the letter, Knox stated Respondent's apparent position that Respondent was unaware until early 2004 that he had been decertified in Maryland. However, Knox further stated that Respondent merely chose not to renew his membership in the District of Columbia bar because 'it proved not to be worthwhile.' Ex. 1 (BC Ex.8). Respondent admitted the truth of BC Ex. 8.

"The Court finds Respondent, at a minimum, knew he was suspended from the practice of law in the District of Columbia when he filed his application for leave to appear *pro h[a]c vice* in December 1999. It is very likely Respondent also knew in December 1999 he was decertified in Maryland because the Court of Appeals sent Respondent a letter at his Maryland law office address advising him of the decertification. He knew the information contained in his application was false at the time of filing. Consequently, Respondent violated Maryland Rules of Professional Conduct 8.4(b), 8.4(c) and 8.4(d).

"In pertinent part Rule 8.4 states:

"It is professional misconduct for a lawyer to:

\*　　\*　　\*

"(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

"(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

"(d) engage in conduct that is prejudicial to the administration of justice[....]

"Respondent violated the provisions of 28 U.S.C. § 1621 which in pertinent part [provides]:

"Whoever—

       *      *      *

"(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true[,] is guilty of perjury.

. . .

"Respondent committed the crime of perjury and therefore 'committ[ed a] criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.' Rule 8.4(b)[.]

"Respondent misrepresented his status as a lawyer to the United States District Court, and made a false statement under the penalty of perjury, a violation of Rule 8.4(c). When Respondent falsely stated he was a member in good standing in the District of Columbia bar[,] he caused a United States District Court Judge, relying on Respondent's affirmation, to order on December 20, 1999, that Respondent be permitted to appear as counsel in that particular case. . . . The administration of justice requires all officers of the Court to speak truthfully in their professional capacities. Respondent's false statement on the application prevented the United States District Court Judge from ruling appropriately because he was misled by Respondent. Respondent's actions were, therefore, prejudicial to the administration of justice. He violated Rule 8.4(d).

### "Unauthorized Practice of Law

"Rule 5.5. Unauthorized Practice of Law; Multijurisdictional Practice of Law. "(a) A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so. Rule 5.5(a).

"Respondent was never admitted to practice law in any jurisdiction other than Maryland and the District of Columbia. . . . After April 4, 1997, the date of his Maryland decertifi-

cation, Respondent was not licensed to practice law in any jurisdiction.... Yet, in 2001, Respondent acted as legal counsel for DuPont Direct Financial Holdings, Inc. in New York ..., for FAB Securities ..., for FAB Capital ..., for Edward McCrann (McCrann) during McCrann's testimony in Washington, DC in 1999 during a NASD investigation ... and in numerous other cases between 1999 and 2001.... Further, his own statements before the NASD indicate he was practicing law.... Respondent's conduct violates Rule 5.5(a), which prohibits a lawyer from practicing law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction. This Rule was in effect at all pertinent times. Respondent's conduct violates N.Y. Jud. Law, Article 15, Section 478, which provides in pertinent part as follows:

"It shall be unlawful for any natural person to practice or appear as an attorney-at-law or as an attorney and counselor-at-law for a person other than himself in a court of record in this state, or to furnish attorneys or counsel or an attorney and counsel to render legal services, or to hold himself out to the public as being entitled to practice law as aforesaid, or in any other manner, or to assume to be an attorney or counselor-at-law, or to assume, use, or advertise the title of lawyer, or attorney and counselor-at-law, or attorney-at-law or counselor-at-law, or attorney, or counselor, or attorney and counselor, or equivalent terms in any language, in such manner as to convey the impression that he is a legal practitioner of law or in any manner to advertise that he either alone or together with any other persons or person has, owns, conducts or maintains a law office or law and collection office, or office of any kind for the practice of law, without having first been duly and regularly licensed and admitted to practice law in the courts of record of his state, and without having taken the constitutional oath."

"The facts show that even though Respondent was not admitted in the State of New York, and did not have an active license to practice in any jurisdiction in the United States, he nonetheless held himself out as a general counsel to DuPont

Direct Financial Holdings, Inc. and DuPont Securities Group, Inc. on numerous occasions and represented individuals and companies in arbitration proceedings on several occasions in New York and in other states. On one occasion, he represented parties in a court proceeding in the Northern District of Illinois. Respondent was clearly practicing law in New York and elsewhere without being licensed to do so. Because he did not have a current license in any jurisdiction, he cannot claim reliance, whether such reliance would be misplaced or not, on licensure in any jurisdiction outside of the State of New York. Therefore, Respondent violated Rule 5.5(a).

### "Fraudulent Press Release

"On March 14, 2002, at 4:35 p.m. and on March 2002 at 12:27 a.m., DuPont Direct Financial Holdings, Inc., of which Respondent was president and general counsel, announced in a press release that monies under management by 'Wavecount Asset Management, LLC (a wholly-owned subsidiary of DIRX [an abbreviation for DuPont Direct Financial Holdings, Inc.]) in conjunction with DIRX's investment affiliate, Native American Securities Company (a broker-dealer member of the NASD and SIPC) have exceeded $100 million.' ... The statement in this press release was false. DuPont Direct Financial Holdings, Inc. had only $20,000,000 worth of assets under its management....

"Respondent approved the issuance of the press release of March 14, 2002. At the time he approved it, he was aware that the assets under the management of DuPont Direct Financial Holdings, Inc. were $20,000,000 and that the figure of $100,000,000 as stated in the press release was greatly inflated. The press releases were issued with the intention of inducing potential investors to place their assets under the management of DuPont Direct Financial Holdings, Inc. ...

"On January 13, 2005, the Department of Enforcement of the NASD filed with the hearing officers an amended Complaint against DuPont Securities Group, Inc. and Respondent individually. The Complaint alleged in paragraphs 21 through 32 that Respondent's company had issued the press release

described above and that of the $100,000,000 reportedly under the management of DuPont Direct, at least $80,000,000 was not, in fact, under the management of DuPont Direct. . . .

"Respondent was represented by counsel in the NASD proceeding until April 14, 2005, the date on which an opposition to a Motion for Partial Summary Disposition filed by the Department of Enforcement w as due. . . .

"Instead of filing an opposition, Respondent's counsel filed a notice of withdrawal, citing the fact that counsel had been unable to adequately communicate with Respondent. . . .

"On April 25, 2005, the hearing officer issued a Show Cause Order requiring Respondent to show cause why Respondent and his company should not be held in default. Respondent did not respond. . . .

"As a result of Respondent's default, the allegations of the Complaint were deemed admitted. . . .

"As a result, the hearing officer found that Respondent had reviewed and approved a press release falsely stating that assets under management of DuPont Direct and its operating subsidiaries exceeded $100,000,000. . . . The hearing officer found that at least $80,000,000 was not, in fact, under the management of DuPont Direct. . . . The hearing officer found Respondent acted with scienter, which was defined as 'a mental state embracing an intent to deceive, manipulate, or defraud. . . .' The hearing officer found from Respondent's conduct that Respondent intended to deceive investors in DuPont Direct. . . .

"Respondent's conduct violates Rule 8.4(c), which prohibits attorneys from engaging in conduct involving 'dishonesty, fraud, deceit or misrepresentation.' In this case, the evidence shows that Respondent, as president and general counsel of DuPont Direct, approved the issuance of a press release which was designed to deceive potential investors in his company by making the company appear more successful than it actually was. His motive in doing so was to induce potential investors to buy stock in a company in which he served as president,

director, and chief legal officer based on false representations. His failure to defend the NASD proceeding in which the press release was an issue reinforces these conclusions. His conduct was deceitful and violated Rule 8.4(c).

"All of the above findings of fact and conclusions of law are based on clear and convincing evidence."

The petitioner took no exceptions to the hearing court's findings of fact and conclusions of law. In fact, it is on the basis of those very findings and conclusions that it makes its recommendation as to sanction. Emphasizing the facts the hearing court found and the conclusions it drew from those facts, the petitioner urges the respondent's disbarment. Noting that the respondent was found to have made knowingly false statements, amounting to perjury, as to his bar status, and to have acted to mislead and defraud investors and, because the respondent did not participate in the proceedings, the absence of mitigating factors or exceptional circumstances, it relies on *Attorney Grievance Comm'n v. Vanderlinde,* 364 Md. 376, 418, 773 A.2d 463, 488 (2001) to justify its recommendation.

For purposes of sanction, when there are no exceptions taken, we treat the findings of fact as established. Rule 16–759(b)(2)(A).[7] *See Attorney Grievance Comm'n v. Logan,* 390 Md. 313, 319, 888 A.2d 359, 363 (2005). Moreover, our de novo review of the hearing court's conclusions of law, Rule 16–759(b)(1),[8] satisfies us that they follow from, and are supported by, the court's factual findings, which, again, have been established.

---

**7.** Maryland Rule 16–759(b)(2)(A) provides:
"(A) If No Exceptions Are Filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any."

**8.** Maryland Rule 16–759(b)(1) provides:
"(1) *Conclusions of Law.* The Court of Appeals shall review de novo the circuit court judge's conclusions of law."

The goal of attorney discipline is protection of the public, rather than the punishment of the erring attorney. *See Attorney Grievance Comm'n v. Goff,* 399 Md. 1, 30–31, 922 A.2d 554, 571 (2007); *Attorney Grievance Comm'n v. Mba–Jonas,* 397 Md. 690, 703, 919 A.2d 669, 677 (2007); *Attorney Grievance Comm'n v. Rees,* 396 Md. 248, 254, 913 A.2d 68, 72 (2006); *Attorney Grievance Comm'n v. Kreamer,* 387 Md. 503, 534, 876 A.2d 79, 97–98 (2005). Imposing sanctions that are commensurate with the nature and gravity of the violations and the intent with which they were committed is consistent with, and in fact furthers, that purpose, *Attorney Grievance Comm'n v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454; *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 484, 671 A.2d 463, 480 (1996); *Attorney Grievance Comm'n v. Myers,* 333 Md. 440, 447, 635 A.2d 1315, 1318 (1994), in that such sanctions promote general and specific deterrence, *Attorney Grievance Comm'n v. Sliffman,* 330 Md. 515, 529, 625 A.2d 314, 321 (1993); *Attorney Grievance Comm'n v. Berger,* 326 Md. 129, 131, 604 A.2d 58, 58 (1992) (citing *Attorney Grievance Comm'n v. Owrutsky,* 322 Md. 334, 355, 587 A.2d 511, 521 (1991)), protect the integrity of the legal profession, *Attorney Grievance Comm'n v. Cassidy,* 362 Md. 689, 698, 766 A.2d 632, 637 (2001), further the public's confidence in the legal profession, *Attorney Grievance Comm'n v. Christopher,* 383 Md. 624, 639, 861 A.2d 692, 701 (2004); *Attorney Grievance Comm'n v. Stein,* 373 Md. 531, 537, 819 A.2d 372, 375 (2003); *Attorney Grievance Comm'n v. Powell,* 369 Md. 462, 474, 800 A.2d 782, 789 (2002), and take account of the facts and circumstances of each particular case, including any mitigating factors. *See Attorney Grievance Comm'n v. Atkinson,* 357 Md. 646, 656, 745 A.2d 1086, 1092 (2000); *Attorney Grievance Comm'n v. Gavin,* 350 Md. 176, 197–98, 711 A.2d 193, 204 (1998). Given the importance we place on maintaining the public's confidence, "the attorney's prior grievance history[,] . . . the attorney's remorse for the misconduct, and the likelihood of the conduct being repeated" are relevant considerations, as well. *Attorney Grievance Comm'n v. Post,* 379 Md. 60, 71, 839 A.2d 718, 724–25 (2003). As to the latter consider-

ation, the likelihood of repetition, we have recognized that conduct, although an aberration, can be so egregious as to warrant the imposition of a significant sanction. *See Attorney Grievance Comm'n v. Franz*, 355 Md. 752, 762, 736 A.2d 339, 344 (1999) (offering *Attorney Grievance Comm'n v. Protokowicz*, 329 Md. 252, 263, 619 A.2d 100, 105 (1993), as an example of such conduct).

As the hearing court found, the petitioner emphasizes, and the respondent does not refute, the respondent made statements that were knowingly false, amounting to perjury, as to his bar status, and acted to mislead and defraud investors. In Vanderlinde, we made clear:

"[u]nlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character[,]"

364 Md. at 418, 773 A.2d at 488, and concluded that "[d]isbarment ordinarily should be the sanction for intentionally dishonest conduct." *Id.* In addition to being dishonest—perjurous and fraudulent—the respondent's conduct is unmitigated, never mind the standard *Vanderlinde* and its predecessors require. *See Vanderlinde*, 364 Md. at 413, 773 A.2d at 485, (requiring the showing of "compelling extenuating circumstances" to mitigate intentional dishonest conduct). Moreover, tolerating such conduct by imposing other than a significant sanction would not protect the integrity of the legal profession and, rather than further the public's confidence in the legal profession, would undermine its confidence. That would be the case whatever the respondent's prior disciplinary history. We agree with the petitioner; the appropriate sanction in this case is disbarment.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM

JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST DAVID WAYNE PARSONS.