*Attorney Grievance Commission of Maryland v. Christopher W. Poverman,* Miscellaneous Docket AG No. 2, September Term, 2014.

**ATTORNEY DISCIPLINARY PROCEEDINGS – RECIPROCAL DISCIPLINE – INDEFINITE SUSPENSION:** An indefinite suspension with the right to apply for reinstatement after one year is the appropriate sanction in a reciprocal discipline action involving an attorney who was publicly reprimanded in Delaware for failing to fulfill a continuing legal education requirement, making a knowing misrepresentation on an annual registration statement, and repeatedly failing to respond to a disciplinary authority.

Argued: October 2, 2014

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 2

September Term, 2014

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

CHRISTOPHER W. POVERMAN

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

Opinion by Adkins, J.

Filed: November 21, 2014

In this reciprocal attorney discipline action, the Attorney Grievance Commission ("AGC") of Maryland, acting through Bar Counsel, asks us to disbar Christopher W. Poverman. On November 7, 2013, the Delaware Supreme Court ordered that Poverman be publicly reprimanded.

Admitted to the Delaware Bar on March 8, 1991, Poverman was on inactive status from 1999 to 2005. After he failed to file a 2005 Annual Registration Statement, the Delaware Supreme Court issued Poverman a show cause order and directed him to appear before them. When Poverman did not appear, he was suspended from the Delaware Bar. Nearly four years later, Poverman filed a petition for reinstatement, which was granted.

By 2013, there were two petitions for disciplinary action pending against Poverman. In case 2012-0228-B ("CLE case"), the Delaware Office of Disciplinary Counsel ("ODC") averred that Poverman violated Delaware Lawyers' Rules of Professional Conduct ("DLRPC") 3.4(c)[1] and 8.4(d). In case 108242-B ("registration case"), ODC averred that Poverman violated DLRPC 8.4(c) and (d).[2] Poverman filed a response in the CLE case but never filed a response in the registration case.

---

[1] **Rule 3.4. Fairness to Opposing Party and Counsel.**
A lawyer shall not:
* * *
(c) knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists[.]

[2] **Rule 8.4. Misconduct.**
It is professional misconduct for a lawyer to:
* * *
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

On June 10, 2013, the Delaware Supreme Court's Board on Professional Responsibility ("Board") conducted a hearing regarding the two petitions. Prior to the hearing, Poverman admitted to all violations. Therefore, the hearing—at which Poverman was the only witness—focused on the appropriate sanctions for those violations. Following the hearing, the Board issued findings of fact, conclusions of law, and a recommended sanction.

## THE BOARD'S FINDINGS OF FACT, CONCLUSIONS OF LAW, AND RECOMMENDED SANCTION

### CLE Case

Poverman did not complete his 2011 continuing legal education ("CLE") requirement by the February 1, 2012 deadline. In June, July, and August 2012, the CLE Commission sent Poverman several letters and emails regarding his noncompliance. Poverman did not respond to any of this correspondence. Consequently, the CLE Commission sent a statement of noncompliance to ODC and a notice and copy to Poverman.

On August 23, 2012, ODC attorney, Patricia Schwartz, notified Poverman that the CLE Commission had referred the matter to ODC. At that time, Poverman provided ODC his Baltimore office address and cell phone number. On August 24, 2012, Schwartz sent a letter to Poverman at that address, requesting proof of CLE compliance by September 7, 2012. Poverman did not respond to this letter, and he denies having received it. Schwartz

---

(d) engage in conduct that is prejudicial to the administration of justice[.]

2

sent a September 19, 2012 follow-up letter to Poverman's Baltimore office, citing her August 24 letter and reminding Poverman of ODC's request and his duty, under DLRPC Rule 8.1(b), to respond. Poverman did not respond to this letter either.

After Poverman failed to respond to two letters from ODC, Jennifer-Kate Aaronson, Chief Counsel of ODC, intervened and sent another letter to Poverman's Baltimore office on October 26, 2012. The letter referred to the August 24 and September 19, 2012 letters, highlighted Poverman's violation of 8.1(b), and informed Poverman of a formal ODC investigation and a scheduled presentation to ODC's Preliminary Review Committee ("PRC"). Poverman, again, did not respond.

Poverman finally called ODC on November 21, 2012 and admitted that he received the September 19 and October 26, 2012 letters. He committed to contacting the CLE Commission and devising a plan to correct his CLE deficiency.

Poverman contacted the CLE Commission on December 6, 2012 and agreed to complete his outstanding CLE by no later than December 31, 2012. Notwithstanding two email reminders from the CLE Commission, Poverman neither completed the CLE by December 31, 2012 nor communicated with the CLE Commission or ODC to let them know he would not fulfill his commitment.

On February 18, 2013, ODC sent a notice to Poverman's Baltimore office, advising that ODC would present its case to the PRC on March 6, 2013 and summarizing the petition to be filed against him. ODC offered Poverman a private admonition and two years' private probation if he consented in writing. On March 12, 2013, ODC sent another letter to Poverman's Baltimore office, advising that the PRC found probable cause to support a

3

petition for discipline, and again offering a private admonition with private probation. Poverman did not accept the offer. Ultimately, he completed the CLE on May 15, 2013, over one year after the deadline.

The Board concluded that Poverman violated DLRPC 3.4(c) and 8.4(d) because he failed to satisfy his 2011 CLE requirement and repeatedly ignored correspondence from the CLE Commission and ODC.

## Registration Case

Poverman failed to complete his 2013 Annual Registration Statement by the March 1, 2013 deadline. On March 12, 2013, the Delaware Supreme Court issued an order directing Poverman to appear before the court and show cause why he should not be suspended or sanctioned for such failure. ODC sent the show cause order to Poverman's Baltimore office on March 19, 2013. On March 27, 2013, the date on which he was due to appear before the court to respond to the show cause order, Poverman called Cathy Howard, Clerk of the Supreme Court, and advised her that he would complete his registration statement online.

Based on their conversation, Howard believed that Poverman had suffered two strokes, which hindered his completion of the registration statement. On the same day, Howard sent an email to ODC relaying that Poverman had experienced two strokes and that he would complete the registration prior to his scheduled appearance before the Supreme Court. On April 9, 2013, Poverman repeated this assertion to the ODC in an email, stating that he had a "second stroke" in December 2012. Poverman, however, was never formally diagnosed as having suffered a stroke.

4

Poverman completed his 2013 registration statement on March 27, 2013. When completing the application, he certified that:

> [T]here are no charges pending or threatened against me before any Court, the Board on Professional Responsibility, or any other similar disciplinary agency in this or any other jurisdiction. I further certify that I do not know of any facts respecting my conduct which would result in the filing of charges or disciplinary action against me.

The Board found that Poverman knew this certification was false:

> [A]t the time [Poverman] made that certification in his 2013 Annual Registration Statement, he was aware of his failure to complete CLE as required, and was on notice of ODC's open investigation of the CLE deficiency as referred to ODC by the CLE Commission in August 2012. [Poverman] was aware that the ODC had planned to present his case to the PRC in October 2012, and that he did not follow through on a corrective action plan he agreed to by December 31, 2012. ODC sent notice, to the address provided by [Poverman], that ODC was again presenting its case to the PRC in March 2013. By the time he filed the Annual Registration on March 27, 2013, [Poverman] had not yet completed his CLE requirements for 2011.

The Board concluded that Poverman violated DLRPC 8.4(c) and (d) when he made the false certification.

**Delaware Sanction**

In determining what sanction to recommend, the Board considered the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1992), which outlines four factors to apply when evaluating misconduct by lawyers: (1) the ethical duties violated by the lawyer; (2) the lawyer's mental state; (3) the potential or actual injury caused by the lawyer's misconduct; and (4) the existence of aggravating or mitigating factors.

5

First, the Board concluded that by violating DLRPC 3.4(c), 8.4(c), and 8.4(d), Poverman violated duties owed to the legal system and the legal profession. Second, the Board determined Poverman's mental state was "knowing" with respect to failing to complete his CLE, disregarding communications from the CLE Commission, and making a false certification on his 2013 registration statement. Third, although it acknowledged that no client was injured as a result of Poverman's misconduct, the Board concluded that Poverman's transgressions "can cause potential harm to the integrity of the legal system." Fourth, and finally, when reviewing aggravating and mitigating factors, the Board highlighted that Poverman exhibited a pattern of misconduct, committed multiple offenses, obstructed the efforts of ODC by repeatedly ignoring their directions, and trivialized his noncooperation with ODC. Recognizing that Poverman cited during the hearing a number of "personal problems," the Board emphasized those problems were "years old" and did not account for his "recalcitrance" and repeated noncompliance with rules and orders.

Ultimately, the Board recommended a public reprimand with the condition that Poverman pay both the CLE Commission late fees and ODC costs. Neither Poverman nor ODC filed objections to the Board's Report.

On November 7, 2013, the Delaware Supreme Court issued an Order approving the Board's Report and imposing a public reprimand with two conditions: (i) Poverman would undergo a mental health evaluation and monitoring by the Delaware Lawyers Assistance Program if he did not seek inactive status within thirty days; and (ii) Poverman would pay the CLE Commission late fees and ODC costs.

**MARYLAND DISCIPLINARY PROCEEDING**

Based on the Delaware sanction, Bar Counsel initiated the present reciprocal disciplinary proceeding by filing a Petition for Disciplinary or Remedial Action on March 18, 2014. In the Petition, Bar Counsel averred that Poverman engaged in professional misconduct as defined in Maryland Rule 16-701(i)[3] and that he violated Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 8.1(a) and (b)[4] and 8.4 (a), (c), and (d)[5]. The following day, this Court issued an order directing the parties to show cause why,

---

[3] **Md. Rule 16-701 Definitions.**

\* \* \*

**(i) Professional Misconduct.** "Professional misconduct" or "misconduct" has the meaning set forth in Rule 8.4 of the Maryland Lawyers' Rules of Professional Conduct, as adopted by Rule 16-812. The term includes the knowing failure to respond to a request for information authorized by this Chapter without asserting, in writing, a privilege or other basis for such failure.

[4] **Rule 8.1. Bar Admission and Disciplinary Matters.**
An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
(a) knowingly make a false statement of material fact; or
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

[5] **Rule 8.4. Misconduct.**
It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\* \* \*

7

based upon the grounds set forth in Maryland Rule 16-773(e),[6] this Court should not impose corresponding discipline.

Bar Counsel filed its response to our Show Cause Order on May 19, 2014, seeking disbarment as the corresponding discipline. It argued a substantial deviation from the Delaware sanction was warranted because Poverman's "serious misconduct" was "infested with dishonesty" and involved "repeated intentional dishonest conduct." Bar Counsel also directed us to the aggravating factors the Board highlighted.

On May 27, 2014, Poverman, representing himself, filed his response. He argued that although "[i]t is understood that [we] will view the factual findings and conclusions of

---

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice[.]

[6] **Md. Rule 16-773 Reciprocal Discipline or Inactive Status.**
* * *
(e) Exceptional Circumstances. Reciprocal discipline shall not be ordered if Bar Counsel or the attorney demonstrates by clear and convincing evidence that:
   (1) the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;
   (2) there was such infirmity of proof establishing the misconduct as to give rise to a clear conviction that the Court, consistent with its duty, cannot accept as final the determination of misconduct;
   (3) the imposition of corresponding discipline would result in grave injustice;
   (4) the conduct established does not constitute misconduct in this State or it warrants substantially different discipline in this State; or
   (5) the reason for inactive status no longer exists.

8

law of the Delaware Court as conclusive evidence of [his] misconduct," we are "not required to impose identical discipline." Poverman contended that there is a "dearth" of cases dealing with similar facts. He surmised that this purported lack of similar cases "could indicate that Maryland would not view a public reprimand as appropriate in this circumstance."

Poverman represented himself at an oral hearing before the Court on October 2, 2014.

## DISCUSSION

### Standard Of Review

In reciprocal discipline cases, we generally treat the findings of fact and conclusions of law of the sister jurisdiction as conclusive evidence of the attorney's misconduct. *Att'y Grievance Comm'n v. Gordon*, 413 Md. 46, 54–55, 991 A.2d 51, 56 (2010); *see* Md. Rule 16-773(g)[7]. We are not required, however, to impose the identical sanction as our sister jurisdiction. *See Att'y Grievance Comm'n v. Weiss*, 389 Md. 531, 546, 886 A.2d 606, 615 (2005). As we explained in *Attorney Grievance Commission v. Whitehead*, Maryland Rule

---

[7] **Md. Rule 16-773(g) Conclusive effect of adjudication.**
Except as provided in subsections (e)(1) and (e)(2) of this Rule, a final adjudication in a disciplinary or remedial proceeding by another court, agency, or tribunal that an attorney has been guilty of professional misconduct or is incapacitated is conclusive evidence of that misconduct or incapacity in any proceeding under this Chapter. The introduction of such evidence does not preclude the Commission or Bar Counsel from introducing additional evidence or preclude the attorney from introducing evidence or otherwise showing cause why no discipline or lesser discipline should be imposed.

9

16-733(f)[8] states that we "*may* impose 'corresponding discipline,' not that [we] *shall* impose 'identical discipline.'" 390 Md. 663, 668, 890 A.2d 751, 754 (2006) (emphasis in original). Also, Maryland Rule 16-773(e) precludes us from imposing reciprocal discipline if Bar Counsel or the attorney demonstrates by clear and convincing evidence that "exceptional circumstances" exist. Among other instances, "exceptional circumstances" exist when the "imposition of corresponding discipline would result in grave injustice," or the attorney's conduct "warrants substantially different discipline in [Maryland]." Md. Rule 16-773(e).

When fashioning a sanction in a reciprocal discipline case, we have "the long-established duty to impose [a sanction] that is consistent with our attorney disciplinary jurisprudence by assessing, independently, the propriety of the sanction imposed by a sister jurisdiction, as well as the sanction recommended by Bar Counsel." *Att'y Grievance Comm'n v. Katz*, 429 Md. 308, 317, 55 A.3d 909, 914 (2012) (citation omitted). "[W]e are concerned with what sanction a lawyer in Maryland could expect in response to similar conduct, were it to have occurred in Maryland." *Gordon*, 413 Md. at 56, 991 A.2d at 57. Therefore, "we are duty bound to look not only to the sanction imposed by the other

---

[8] **Md. Rule 16-773(f) Action by Court of Appeals.**

Upon consideration of the petition and any answer to the order to show cause, the Court of Appeals may immediately impose corresponding discipline or inactive status, may enter an order designating a judge pursuant to Rule 16-752 to hold a hearing in accordance with Rule 16-757, or may enter any other appropriate order. The provisions of Rule 16-760 apply to an order under this section that disbars or suspends an attorney or that places the attorney on inactive status.

jurisdiction but to our own cases as well. The sanction will depend on the unique facts and circumstances of each case, but with a view toward consistent dispositions for similar misconduct." *Id.* (citation and internal quotation marks omitted). In order to avoid inconsistent sanctions, "we need not follow the original jurisdiction's sanction when our cases demonstrate that we would apply a different sanction, had the conduct occurred or the case originated here." *Id.* at 57, 991 A.2d at 57 (citation omitted).

There is at least one exception to the rule that we should deviate from the sanction of the sister jurisdiction when the sanction would be different had the misconduct occurred in Maryland. In *Attorney Grievance Commission v. Ayres-Fountain*, 379 Md. 44, 838 A.2d 1238 (2003), another reciprocal discipline action based on misconduct in Delaware, we suspended Ayres-Fountain for three years just as the Delaware Supreme Court had done. Ayres-Fountain admitted that, in addition to other transgressions, she falsely represented to the Delaware Supreme Court that she had timely filed and paid all federal, state, and local payroll, gross receipts, and income taxes between 1996 and 2000. *Id.* at 47, 838 A.2d at 1240. Ultimately, we determined it was appropriate to impose the identical sanction as the Delaware Supreme Court, concluding:

> [W]here a respondent's most serious misconduct involves misrepresentations, and those misrepresentations are to the Supreme Court of the *State in which he or she principally practices and that sanctioned him or her*, it ordinarily is appropriate to defer to that court, notwithstanding that the sanction it imposed is not identical to the one that may have been imposed by this Court were the same conduct to have occurred in this State.

*Id.* at 59, 838 A.2d at 1247 (emphasis added).

11

The *Ayres-Fountain* exception does not apply to this case because there is no evidence that Poverman principally practiced in Delaware when he made the false certification to the Delaware Supreme Court. Therefore, we conclude we are not required, under *Ayres-Fountain*, to impose the identical sanction.

**MLRPC Violations**

The Board concluded that Poverman violated DLRPC 3.4(c), 8.4(c), and 8.4(d). DLRPC 8.4(c) and 8.4(d) directly correspond to MLRPC 8.4(c) and 8.4(d). DLRPC 3.4(c), however, has no MLRPC analogue.[9] We conclude that Poverman also violated MLRPC 8.1(b)[10] by repeatedly failing to respond to correspondence from the CLE Commission and ODC even though the Board did not conclude that he violated the MLRPC 8.1(b) analogue, DLRPC 8.1(b). *See Att'y Grievance Comm'n v. Brown,* 353 Md. 271, 287, 725 A.2d 1069, 1076 (1999) (concluding that repeated failures to answer Bar Counsel's requests for information violated MLRPC 8.1(b)); *see also Att'y Grievance Comm'n v. Litman*, __ Md. __ (2014) (No. 81, Sept. Term 2013) (filed Oct. 21, 2014) (concluding that attorney violated MLRPC 1.16(a)(1) notwithstanding that Disciplinary Board of the Supreme Court of Pennsylvania did not conclude that attorney violated the MLRPC analogue,

---

[9] Maryland does not have a CLE requirement for practicing attorneys. It does, however, require bar members to report their pro bono legal services and pay an annual assessment to the Client Protection Fund. *Attorney Reporting Requirements*, MdCourts.gov, http://www.courts.state.md.us/lawyers/attorneyreportingrequirements.html#probono (last visited Nov. 12, 2014). Failure to satisfy these obligations results in a non-disciplinary decertification order.

[10] MLRPC 8.1(b) prohibits an attorney from "fail[ing] to respond to a lawful demand for information from an admissions or disciplinary authority."

Pennsylvania Rules of Professional Conduct 1.16(a)(1)). We must determine what sanction an attorney "could expect in response to [these violations] were [they] to have occurred in Maryland." *Gordon*, 413 Md. at 56, 991 A.2d at 57. In making this determination, we consider any mitigating factors. *Id.* at 63, 991 A.2d at 61.

**Maryland Sanction**

Bar Counsel contends that disbarment is warranted because Poverman made false representations that were intentionally deceitful. A false representation is intentionally deceitful when the attorney knew the representation was false. *Att'y Grievance Comm'n v. Siskind*, 401 Md. 41, 70, 930 A.2d 328, 345 (2007). Here, Poverman made two false representations: (1) he told the Clerk of the Supreme Court that he suffered two strokes; and (2) he certified on his 2013 registration statement that there was no disciplinary action pending or threatened against him. Bar Counsel contends that it is undisputed that Poverman knew both of these representations were false. We disagree.

The Board found Poverman's mental state was "knowing" only with respect to failing to complete his CLE, disregarding communications from the CLE Commission, and making a false certification on his 2013 registration statement. The Board never found Poverman knew he had not suffered two strokes. Thus, Poverman only made one false representation that was intentionally deceitful—the false certification.

As a general matter, when an attorney is intentionally deceitful, "[d]isbarment ordinarily should be the sanction." *Att'y Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 418, 773 A.2d 463, 488 (2001); *see also Att'y Grievance Comm'n v. Fader*, 431 Md. 395, 438, 66 A.3d 18, 43 (2013) ("[C]andor by a lawyer, in any capacity, is one of the most

13

important character traits of a member of the Bar. . . . When a lawyer lies to a tribunal, he or she violates a norm that warrants disbarment."). Because this is not a bright-line rule, however, *see Att'y Grievance Comm'n v. Reinhardt*, 391 Md. 209, 225–26, 892 A.2d 533, 542 (2006), we have, in many instances, imposed a sanction less severe than disbarment when an attorney was intentionally deceitful, *see, e.g.*, *Att'y Grievance Comm'n v. Brown*, 415 Md. 269, 999 A.2d 1040 (2010) (suspending attorney for ninety days for knowingly misrepresenting to Bar Counsel and the grantor of a mortgage assigned to attorney's client that attorney had prepared a mortgage release and sent it to client); *Att'y Grievance Comm'n v. Tanko*, 408 Md. 404, 969 A.2d 1010 (2009) (suspending attorney for sixty days for knowingly filing expungement petitions that were not ripe); *Att'y Grievance Comm'n v. Maxwell*, 307 Md. 600, 516 A.2d 570 (1986) (suspending attorney for ninety days for making a knowingly false notarization and falsely witnessing a deed); *Att'y Grievance Comm'n v. Levitt,* 286 Md. 231, 406 A.2d 1296 (1979) (suspending attorney for one year for making a knowingly false statement to a judge about a pending case). When fashioning a sanction for an attorney who was intentionally deceitful, "we must still examine the facts, circumstances, and mitigation" of the case. *Reinhardt*, 391 Md. at 226, 892 A.2d at 542 (quoting *Att'y Grievance Comm'n v. Lane*, 367 Md. 633, 647, 790 A.2d 621, 629 (2002)).

To support its recommendation of disbarment, Bar Counsel cites three cases in which this Court disbarred attorneys who made knowingly false representations. The misconduct of the attorneys in these three cases, however, is more egregious than Poverman's.

In *Attorney Grievance Commission v. Fader*, *supra*, an attorney committed multiple offenses. First, he commingled personal and client moneys in two trust accounts, resulting in an overdrawn trust account. *Fader*, 431 Md. at 409–10, 66 A.3d at 26–27. Second, he knowingly misled the Maryland Department of Health and Mental Hygiene's Office of Administrative Hearings ("OAH"). Fader's paralegal submitted a fabricated doctor's note with a postponement request, and Fader then "'overtly misled' the OAH when he appeared before the administrative law judge and 'represented to the OAH that he sought and received treatment at Sinai Hospital,' when, in fact he had not." *Id.* at 435, 66 A.3d at 42. Fader made this misrepresentation in the course of representing a plaintiff in a wrongful termination action.[11]

Misusing attorney trust accounts and failing to respond to disciplinary agencies are both prejudicial to the administration of justice. *See Att'y Grievance Comm'n v. Goodman*, 426 Md. 115, 128, 43 A.3d 988, 995 (2012) ("[T]he commingling of personal and client funds, including the failure to maintain a separate trust account, is prejudicial to the administration of justice."); *Att'y Grievance Comm'n v. Park*, 427 Md. 180, 194, 46 A.3d 1153, 1161 (2012) (concluding that attorney's failure to respond to Bar Counsel's attempted communications further contributed to a violation of MLRPC 8.4(d)). Fader's misrepresentation, however, was considerably more severe than Poverman's false certification because Poverman did not make the false certification during the course of, or

---

[11] The Court concluded that Fader violated MLRPC 1.15(a) and (b), 3.3(a)(1) and (4), 5.3(b), 8.4(a), (c), and (d), as well as Maryland Rules 16-606.1 and 16-607. *Att'y Grievance Comm'n v. Fader*, 431 Md. 395, 436, 66 A.3d 18, 42 (2013).

in relation to, his representation of a client.[12]  This is significant because "[i]n selecting a sanction, we are cognizant of the principle that attorney discipline proceedings are not instituted to punish an offending lawyer, but rather to protect the public . . . ."  *Id.* at 195, 46 A.3d at 1161 (citation omitted).  Also, Fader had been reprimanded "for using marijuana on an airplane, for transporting drug paraphernalia on the flight, and for making statements that could be construed by others as a claim by him to be a police officer."  *Fader*, 431 Md. at 437, 66 A.3d at 43.  The Board found Poverman had no prior disciplinary record.

In *Attorney Grievance Commission v. Joseph*, 422 Md. 670, 31 A.3d 137 (2011), Joseph knowingly misrepresented that he resided in Maryland when seeking *pro hac vice* admission in California.  Joseph knowingly misstated his home and business addresses on multiple occasions and in multiple applications.  *Id.* at 688–89, 31 A.3d at 147–48.  Additionally, Joseph knowingly misled not only the California state and federal courts, but also the California attorney who agreed to sponsor his *pro hac vice* admission.  *Id.* at 675–76, 31 A.3d at 140.[13]  Joseph worked with this attorney on several cases.

Here, Poverman made one knowing misrepresentation.  Although certainly a single misrepresentation could be grave enough to warrant disbarment, Bar Counsel did not cite, and the Court has not found, any case in which we disbarred an attorney for a single instance of falsely certifying that the attorney had no disciplinary action pending or

---

[12] The Board found that Poverman was terminated from his of-counsel position with a small firm in Baltimore on March 11, 2013, two weeks before he made the false certification.

[13] The Court concluded that Joseph violated MLRPC 3.3(a)(1) and 8.4(c) and (d).  *Att'y Grievance Comm'n v. Joseph,* 422 Md. 670, 699, 31 A.3d 137, 154 (2011).

threatened against him. Also, the Board did not find that Poverman misled any attorneys with whom he had worked.

In *Attorney Grievance Commission v. Parsons*, 404 Md. 175, 946 A.2d 437 (2008), Parsons made statements as to his bar status that were knowingly false, and acted to mislead and defraud investors. In an application to appear *pro hac vice* in the United States District Court for the Northern District of Illinois, Parsons knowingly misrepresented that he was a member in good standing of the District of Columbia Bar. *Id.* at 178–79, 946 A.2d at 439–40.[14] Parsons's misrepresentation in his *pro hac vice* application is similar to Poverman's false certification because both misrepresentations were made in the course of completing mandatory disclosures.

The difference between *Parsons* and this case, however, is that Parsons also approved a knowingly fraudulent press release that was issued with the intention of inducing potential investors to place their assets under the management of the financial company for which Parsons was president and general counsel. *See id.* at 182, 946 A.2d at 441. Although Poverman's knowing misrepresentation cannot be tolerated and merits a strong sanction, he made only one knowing misrepresentation and did not mislead any clients or investors.

The facts of this case are more akin to *Attorney Grievance Commission v. Kepple*, 432 Md. 214, 68 A.3d 797 (2013) and *Attorney Grievance Commission v. Harrington,* 367 Md. 36, 785 A.2d 1260 (2001). In both of these cases, we imposed indefinite suspensions.

---

[14] The Court concluded that Parsons violated MLRPC 8.4(b), (c), and (d). *Att'y Grievance Comm'n v. Parsons*, 404 Md. 175, 179, 946 A.2d 437, 440 (2008).

Harrington knowingly misled his client that he had filed suit on her behalf, when in fact he had not. *Harrington*, 367 Md. at 48, 785 A.2d at 1267. He also failed to respond to numerous certified letters from the AGC requesting information in connection with disciplinary investigations. *Id.* at 51, 785 A.2d at 1269.

Kepple knowingly received the benefit of in-state tuition at West Virginia University College of Law while maintaining her primary residence in Maryland. Kepple was living in West Virginia when she applied to law school, but moved to Maryland prior to beginning her first semester. *Kepple*, 432 Md. at 220–21, 68 A.3d at 800–01. Kepple lived in Maryland for the entire three years of law school but never notified the university or the law school that she had changed her residence. *Id.* at 221, 68 A.3d at 801.

After graduating from law school, Kepple applied for admission to the Maryland Bar. *Id.* at 222, 68 A.3d at 802. Question 17 of her application asked whether there had been "any circumstances or unfavorable incidences in [her] life, whether at school, college, law school, business or otherwise, which may have a bearing upon [her] character or fitness to practice law, not called for by the questions contained in this questionnaire or disclosed in [her] answers?" *Id.* Kepple answered "no" to this question. *Id.*

Ultimately, Kepple was admitted to the Maryland Bar. *Id.* Thirteen years later, the AGC received a complaint from Kepple's ex-husband alleging that Kepple had manipulated her residency status during law school. *Id.* at 222–23, 68 A.3d at 802. Bar Counsel pursued the complaint, and the hearing judge concluded that Kepple violated MLRPC 8.1(a). *Id.* at 224, 68 A.3d at 803. Specifically, because he found that Kepple knew she was erroneously receiving the benefit of in-state tuition throughout law school,

the hearing judge also found that she knew that "an unfavorable circumstance or incident in her life" had occurred, requiring her to answer "yes" to question 17.  *Id.*  Prior to this violation, Kepple had no disciplinary violations during her fourteen-year legal career.  *Id.* at 231, 68 A.3d at 807.

Here, Poverman, like Harrington, committed one knowing misrepresentation and repeatedly failed to respond to lawful requests for information from a disciplinary authority.  Like Kepple, Poverman made a knowing misrepresentation in a disclosure that was required in order to practice law and—as the Board found—he had no prior disciplinary record throughout a lengthy legal career.  Because Poverman's conduct falls within the same category of severity as that of Harrington and Kepple, we conclude that the appropriate sanction in Maryland is also an indefinite suspension.

Not all indefinite suspensions are alike, however.  The measure of severity of each will turn on whether we specify a time after which the lawyer may reapply and if so, what time we assign.[15]  In *Kepple*, Bar Counsel recommended indefinite suspension with a right to apply for reinstatement after no less than one year.  *Id.* at 230, 68 A.3d at 806.  The Court, however, imposed a sanction of indefinite suspension with a right to apply for reinstatement after no less than thirty days.  *Id.*  Critical to the Court's decision were the "unique mitigating factors" that weighed in Kepple's favor.  *See id.* at 230–31, 68 A.3d at 807.  First, in her fourteen-year legal career, Kepple had no prior disciplinary violations. *Id.* at 231, 68 A.3d at 807.  Second, Kepple was "youthful and inexperienced at the time of

---

[15] Generally, we impose an indefinite suspension without specifying a time after which the lawyer may apply for reinstatement when more serious offenses are involved.

19

her misconduct, which bespoke less than fully formed sound judgment." *Id.* Third, Kepple demonstrated remorse for her actions—she contacted her former law school and met with the Dean to offer repayment for the tuition she should have paid. *Id.* After balancing the gravity of Kepple's misconduct against these mitigating factors, the Court concluded that indefinite suspension with a right to apply for reinstatement after no less than one year would be "too harsh." *Id.* at 232, 68 A.3d at 807–08.

Here, we conclude that indefinite suspension with a right to apply for reinstatement after no less than one year would not be "too harsh." Although Poverman also has no prior disciplinary history, the other mitigating factors that applied to Kepple do not apply to him. Poverman was not "youthful and inexperienced" when he committed the misconduct, and the Board did not find he made a timely good faith effort to rectify the consequences of his misconduct. Furthermore, Poverman, unlike Kepple, repeatedly ignored communications from a disciplinary authority. We conclude that Poverman's misconduct warrants an indefinite suspension with a right to apply for reinstatement in one year. We shall so order.

> **IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO RULE 16–761 FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST CHRISTOPHER W. POVERMAN.**