*Attorney Grievance Commission of Maryland v. David Peter Buehler*, Miscellaneous Docket AG No. 12, September Term, 2014.

**ATTORNEY DISCIPLINARY PROCEEDINGS – RECIPROCAL DISCIPLINE – DISBARMENT:** Disbarment is the appropriate sanction in a reciprocal discipline action involving an attorney who was suspended from the practice of law for six months in Virginia for making repeated misrepresentations to the court, failing to appear at scheduled hearings, and bringing a baseless proceeding, who then failed to notify Bar Counsel of discipline imposed against him in another jurisdiction. Such conduct violated MLRPC 1.3(a), 3.1, 3.3(a)(1), 3.4(c), 4.4, 8.4(c) and (d), and Maryland Rule 16-773(a).

Argued: December 5, 2014

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 12

September Term, 2014

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

DAVID PETER BUEHLER

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

Opinion by Adkins, J.

Filed:   January 26, 2015

In this reciprocal attorney discipline action, the Attorney Grievance Commission of Maryland ("AGC"), acting through Bar Counsel, asks us to disbar or suspend indefinitely David Peter Buehler. On February 21, 2014, the Virginia State Bar Disciplinary Board ("Board") ordered that Buehler be suspended for six months.

After a determination by a Subcommittee of the Second District of the Virginia State Bar, the matter came before a panel of the Board, where Buehler represented himself. The Virginia State Bar presented evidence, and Buehler stipulated to the facts below.

## THE BOARD'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

As an attorney licensed to practice in Maryland and Virginia, Buehler represented Jill Sozio in matters related to her business, Jill's Deli, Bakery & Grill. In June 2011, SEI Realty, L.L.C. ("SEI") filed an unlawful detainer action (the "Unlawful Detainer Case") against Sozio for unpaid rent of $1,257.54 and possession of the premises related to Sozio's lease of space in a Norfolk, Virginia, shopping center for the operation of her business. The following month, Buehler filed two actions in the Norfolk Circuit Court on behalf of Sozio against the former directors, officers, and owners of both Hampton Roads Enterprises, Inc.—the owners of the premises at the time Sozio had executed the lease— and Suburban Asset Management Corp.—the agent and management company for the shopping center (collectively with SEI, the "Shopping Center"). In the first action (the "Injunction Case"), Sozio requested "injunctive relief in the form of an order allowing her access to the [p]remises to retrieve her personal property." In the other action (the "Damages Case"), Sozio sought $1,550,000 for breach of lease, wrongful eviction, conversion, tortious interference, and lost profits.

**The Injunction Case**

On July 19, 2011, the Norfolk Circuit Court entered an Agreed Order in the Injunction Case, granting Sozio access to the property to retrieve her personal property and ordering her to surrender possession by July 31. In August, the Shopping Center filed a motion requesting that: (1) Sozio show cause why she should not be held in contempt for failing to comply with the terms of the Agreed Order; (2) the Shopping Center be allowed to proceed with the Unlawful Detainer Case; (3) the injunction be dismissed; and (4) the Shopping Center receive attorneys' fees and costs. Shane L. Smith, counsel for the Shopping Center, noticed a hearing[1] on the motion for September 1, 2011, but Buehler failed to appear. As a result, the Circuit Court entered an order granting the motion.

Four weeks later, Buehler filed a response to the Order to Show Cause, requesting that the September 1 order be vacated and representing that he did not receive the Order until September 27, "apparently due to the postal carrier's inability to access his mailbox." But he failed to disclose that the Shopping Center had sent the Order by both mail and email. After the Circuit Court entered an order awarding the Shopping Center $2,135 in attorneys' fees, Sozio moved that the show cause order be lifted and the request for attorneys' fees be denied. In an October 26 letter to the presiding judge and court clerk, Buehler stated that he received a copy of the July 19 Agreed Order in September, and that although he had provided Smith with a "signed sketch order" dismissing the injunction

---

[1] To "notice a hearing" is to prepare and send a pleading to both the court and opposing counsel reflecting the motion, date, and time. Usually, this is done after counsel have conferred to agree on a date approved by the court. *See* Norfolk Circuit Court Local Rule 2(A)(3)(a).

case, the sketch order was never submitted for entry. Smith refuted this assertion, and when asked to do so, Buehler failed to provide proof that he had sent the sketch order. After Buehler failed to notice a hearing for Sozio's motion requesting that the show cause order be lifted and the fees dismissed, Smith noticed the pleading for hearing on January 31, 2012. When Buehler did not appear at the hearing, the court denied Sozio's requested relief.

### The Damages Case

The Shopping Center filed multiple motions in response to Sozio's suit for damages. Although he had not requested the Shopping Center's consent to extend the deadline for responding to these motions, Buehler filed a motion for extension of time with the Circuit Court, stating that he was "seeking to determine if counsel for [the Shopping Center] will oppose this extension, but has not as of yet received a response." In an effort to file an endorsed scheduling order prior to the November 10 scheduling conference, Smith attempted to determine Buehler's availability for trial, but was unsuccessful. When Buehler filed a Memorandum of Lis Pendens on behalf of Sozio, SEI filed a motion for leave to intervene, to quash, and for sanctions. SEI contended that the Memorandum of Lis Pendens was improperly filed because Sozio was not asserting an ownership interest and because Sozio had not named the owners as defendants. Buehler did not file a written response. Following a hearing on the matter, the court granted SEI's motion to quash and awarded attorneys' fees.

After Smith prepared and sent to Buehler an order containing the rulings and a scheduling order setting trial dates in June, Buehler returned a facsimile transmission of

3

both orders bearing his signature. Despite requests, Buehler failed to return orders bearing an original signature, further delaying proceedings. In February 2012, Buehler filed a motion for nonsuit and—one week later—a motion to withdraw as counsel.

## The Unlawful Detainer Case

Following trial of SEI's Unlawful Detainer Case in September 2011, the Norfolk General District Court entered judgment in favor of SEI for both unpaid rent and possession of the property. Sozio appealed, and when Buehler again failed to provide his availability for trial, Smith filed a motion to set the trial date and enter a scheduling order. Notwithstanding that Smith sent a Notice of Hearing via mail and email, Buehler did not appear at the hearing on SEI's motion. On December 12, 2011, Smith sent Buehler copies of the orders, including the orders setting trial for February 2, 2012. In response, "[b]y letters dated January 26, 2012, [Buehler] stated that he had just discovered the unlawful detainer case was set for trial on February 2, 2012, was not aware a scheduling conference had taken place, and had not received the scheduling order." He filed a motion for continuance on February 2, asserting the same. The court denied the motion and "granted SEI's motion to exclude Sozio from presenting any testimony or other evidence other than for rebuttal or impeachment based on her non-compliance with the filing deadlines in the scheduling order." Following trial, the court entered judgment in favor of SEI. Shortly thereafter, Buehler moved for leave to withdraw as counsel.

4

**Virginia Sanction**

The Board determined that Buehler violated Virginia State Bar Rules of Professional Conduct ("VSBRPC") 1.3(a)[2], 3.1[3], 3.3(a)(1)[4], 3.4(g)[5], 4.4[6], and 8.4(c)[7]. It

---

[2] VSBRPC 1.3(a) mirrors MLRPC 1.3(a) and provides:
> A lawyer shall act with reasonable diligence and promptness in representing a client.

[3] VSBRPC 3.1 resembles MLRPC 3.1 and provides:
> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

[4] VSBRPC 3.3(a)(1) resembles MLRPC 3.3(a)(1) and provides:
> (a) A lawyer shall not knowingly:
> (1) make a false statement of fact or law to a tribunal.

[5] VSBRPC 3.4(g) resembles MLRPC 3.4(c) and provides:
> A lawyer shall not:
> * * *
> (g) Intentionally or habitually violate any established rule of procedure or of evidence, where such conduct is disruptive of the proceedings.

MLRPC 3.4(c) provides:
> A lawyer shall not:
> * * *
> (c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists[.]

[6] VSBRPC 4.4 resembles MLRPC 4.4 and provides:
> In representing a client, a lawyer shall not use means that have no purpose other than to embarrass, delay, or burden a third

5

then imposed a six month suspension, accepting the joint recommendation for sanction made by the Virginia State Bar and Buehler. Buehler neither appealed the sanction to the Supreme Court of Virginia, nor notified Maryland Bar Counsel that he had been sanctioned in Virginia.

### MARYLAND DISCIPLINARY PROCEEDING

The Clerk of the Virginia Disciplinary System notified the AGC of Buehler's sanction. Bar Counsel subsequently filed a Petition for Disciplinary or Remedial Action on May 22, 2014. In addition to the MLRPC analogs to the VSBRPC the Board found Buehler to have violated—1.3(a), 3.1, 3.3(a)(1), 3.4(c), 4.4, and 8.4(c)—Bar Counsel contended that Buehler's conduct also violated MLRPC 8.4(d)[8] and Maryland Rule 16-773(a)[9].

---

person, or use methods of obtaining evidence that violate the legal rights of such a person.

[7] VSBRPC 8.4(c) resembles MLRPC 8.4(c) and provides:
It is professional misconduct for a lawyer to:
* * *
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]

[8] MLRPC 8.4(d) provides:
It is professional misconduct for a lawyer to:
* * *
(d) engage in conduct that is prejudicial to the administration of justice[.]

[9] Maryland Rule 16-773(a) provides:
**(a) Duty of Attorney.** An attorney who in another jurisdiction (1) is disbarred, suspended, or otherwise disciplined, (2) resigns from the bar while disciplinary or remedial action is threatened or pending in that jurisdiction, or

This Court issued a Show Cause Order as to why corresponding discipline should not be imposed. In its response, Bar Counsel argued that corresponding discipline would be inconsistent with Maryland precedent and urged the Court to impose either indefinite suspension or disbarment, stating: "[Buehler's] conduct involved several instances of misrepresentations, by both omission and commission, to a Court in Virginia in addition to other unethical conduct involving delay and obstruction of the proceedings." Bar Counsel also directed the Court's attention to aggravating factors, citing a pattern of misconduct and multiple offenses. Furthermore, Bar Counsel highlighted Buehler's failure to notify Bar Counsel of his Virginia sanction, additional misconduct the Board had not considered.

Buehler did not respond to the Petition for Disciplinary or Remedial Action or the Show Cause Order and failed to appear at the December 5, 2014 hearing on the matter before this Court.

## DISCUSSION

### Standard of Review

We recently explained:

> In reciprocal discipline cases, we generally treat the findings of fact and conclusions of law of the sister jurisdiction as conclusive evidence of the attorney's misconduct. *Att'y Grievance Comm'n v. Gordon*, 413 Md. 46, 54–55, 991 A.2d 51, 56 (2010); *see* Md. Rule 16-773(g)[10]. We are not

---

(3) is placed on inactive status based on incapacity shall inform Bar Counsel promptly of the discipline, resignation, or inactive status.

[10] **Md. Rule 16-773(g) Conclusive effect of adjudication.**
Except as provided in subsections (e)(1) and (e)(2) of this Rule, a final adjudication in a disciplinary or remedial proceeding by

required, however, to impose the identical sanction as our sister jurisdiction. *See Att'y Grievance Comm'n v. Weiss*, 389 Md. 531, 546, 886 A.2d 606, 615 (2005).

\* \* \*

"[W]e are concerned with what sanction a lawyer in Maryland could expect in response to similar conduct, were it to have occurred in Maryland." *Gordon*, 413 Md. at 56, 991 A.2d at 57. Therefore, "we are duty bound to look not only to the sanction imposed by the other jurisdiction but to our own cases as well. The sanction will depend on the unique facts and circumstances of each case, but with a view toward consistent dispositions for similar misconduct." *Id.* (citation and internal quotation marks omitted).

*Att'y Grievance Comm'n v. Poverman*, 440 Md. 588, 599, 103 A.3d 667, 673–74 (2014).

## MLRPC Violations

As discussed *supra*, the Board concluded that Buehler violated VSBRPC 1.3(a), 3.1, 3.3(a)(1), 3.4(g), 4.4, and 8.4(c). These rules mirror or closely resemble MLRPC 1.3(a), 3.1, 3.3(a)(1), 3.4(c), 4.4, and 8.4(c). We conclude Buehler also violated MLRPC 8.4(d) by repeatedly failing to attend hearings on behalf of Sozio, *see Att'y Grievance Comm'n v. Dominguez*, 427 Md. 308, 325–26, 47 A.3d 975, 985 (2012), and Maryland Rule 16-773(a) by failing to notify the AGC of his Virginia sanction, *see Att'y Grievance Comm'n v. Scroggs*, 387 Md. 238, 254, 874 A.2d 985, 995 (2005). We must determine what sanction

another court, agency, or tribunal that an attorney has been guilty of professional misconduct or is incapacitated is conclusive evidence of that misconduct or incapacity in any proceeding under this Chapter. The introduction of such evidence does not preclude the Commission or Bar Counsel from introducing additional evidence or preclude the attorney from introducing evidence or otherwise showing cause why no discipline or lesser discipline should be imposed.

8

an attorney "could expect in response to [these violations] were [they] to have occurred in Maryland." *Gordon*, 413 Md. at 56, 991 A.2d at 57. In making this determination, we consider any aggravating or mitigating factors. *See Att'y Grievance Comm'n v. Whitehead*, 405 Md. 240, 261–64, 950 A.2d 798, 811–13 (2008).[11]

---

[11] Aggravating factors include:

  (a) prior disciplinary offenses;
  (b) dishonest or selfish motive;
  (c) a pattern of misconduct;
  (d) multiple offenses;
  (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
  (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
  (g) refusal to acknowledge wrongful nature of conduct;
  (h) vulnerability of victim;
  (i) substantial experience in the practice of law;
  (j) indifference to making restitution;
  (k) illegal conduct, including that involving the use of controlled substances.

American Bar Association, *Standards for Imposing Lawyer Sanctions,* § 9.22 (1992), *reprinted in Compendium of Professional Responsibility Rules and Standards* (2014).

Mitigating factors include:

  (a) absence of a prior disciplinary record;
  (b) absence of a dishonest or selfish motive;
  (c) personal or emotional problems;
  (d) timely good faith efforts to make restitution or to rectify consequences of misconduct;
  (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;
  (f) inexperience in the practice of law;
  (g) character or reputation;
  (h) physical disability;
  (i) mental disability or chemical dependency including alcoholism or drug abuse when:

9

**Maryland Sanction**

Bar Counsel contends that Buehler's actions warrant disbarment because they consist of a pattern of misconduct and multiple violations of the MLRPC. Specifically, Bar Counsel charges Buehler with repeatedly making misrepresentations to Virginia courts and the AGC and repeatedly failing to appear at court proceedings.

Buehler's gravest transgressions are his repeated misrepresentations. "[C]andor by a lawyer, in any capacity, is one of the most important character traits of a member of the Bar. . . . When a lawyer lies to a tribunal, he or she violates a norm that warrants disbarment." *Att'y Grievance Comm'n v. Fader*, 431 Md. 395, 438, 66 A.3d 18, 43 (2013) (alteration in original) (internal quotation marks and citation omitted). Furthermore, "disbarment is the appropriate sanction when an attorney has engaged in 'repeated material misrepresentations that constitute a pattern of deceitful conduct, as opposed to an isolated

---

          (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
          (2) the chemical dependency or mental disability caused the misconduct;
          (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
          (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely;
    (j)    delay in disciplinary proceedings;
    (k)    imposition of other penalties or sanctions;
    (l)    remorse;
    (m)    remoteness of prior offenses.

American Bar Association, *Standards for Imposing Lawyer Sanctions*, § 9.32 (1992), *reprinted in Compendium of Professional Responsibility Rules and Standards* (2014).

10

instance[.]'" *Att'y Grievance Comm'n v. Steinberg*, 395 Md. 337, 373, 910 A.2d 429, 450 (2006) (quoting *Att'y Grievance Comm'n v. Lane*, 367 Md. 633, 647, 790 A.2d 621, 629 (2002)).

Here, Buehler misled Virginia courts on multiple occasions, claiming that he had not received notice of scheduled hearings when indeed he had. This sanctionable behavior occurred at least three times. Furthermore, upon receiving a six month suspension from the Virginia State Bar, Buehler committed a misrepresentation by omission, failing to notify the AGC of his Virginia sanction.

It is also significant that Buehler repeatedly failed to appear at hearings and frequently delayed the judicial process. "We have said in applying MLRPC 1.3 that this Court has consistently regarded neglect and inattentiveness to a client's interests to be [an ethical violation] warranting the imposition of some disciplinary sanction." *Att'y Grievance Comm'n v. Garrett*, 427 Md. 209, 223, 46 A.3d 1169, 1177 (2012) (alteration in original) (internal quotation marks and citations omitted). Buehler's conduct was similar to that in *Garrett*. There, this Court disbarred an attorney for "failing to appear for a scheduled hearing and not communicating with the court, client, or opposing counsel during the two weeks preceding the hearing." *Id.* at 221, 46 A.3d at 1176. Buehler, on more than one occasion, failed to attend hearings and conferences and later attempted to undo that ethical lapse by claiming that he had no knowledge of their existence. This pattern of misconduct when viewed in the context of Buehler's other violations warrants disbarment.

Accordingly, we conclude that disbarment is the appropriate sanction when an attorney makes repeated misrepresentations to the court, fails to appear at scheduled hearings, brings a baseless proceeding, and fails to notify Bar Counsel of discipline imposed against him in another jurisdiction. For these reasons, we entered the December 10, 2014 per curiam order disbarring Respondent and awarding costs against him.